[Civ. No. 22637. First Dist., Div. Three. Feb. 21, 1966.]

MELVIN M. BELLI et al., Plaintiffs and Appellants, v. ROBERTS BROTHERS FURS, Defendant and Respondent.

Melvin M. Belli, in pro. per., Belli, Ashe & Gerry, Belli, Ashe, Gerry & Ellison and Frederick A. Cone for Plaintiffs and Appellants.

Weyman I. Lundquist, M. Laurence Popofsky and Heller, Ehrman, White & McAuliffe for Defendant and Respondent.

SALSMAN, J.—This is an appeal from a summary judgment granted in respondent's favor, on the ground that the statute of limitations (Code Civ. Proc., § 340, subd. 3) barred appellants' alleged causes of action. We conclude that the trial court was correct in its ruling, and therefore affirm the judgment.

Appellants filed their complaint on February 14, 1963. They alleged that, on February 14, 1962, ". . . defendants . . . wrongfully . . . did cause to be published a certain statement concerning plaintiffs, to-wit: Plaintiff, MELVIN M. BELLI, had refused to pay for a certain fur stole allegedly purchased from the defendants, ROBERTS BROTHERS FURS, a corporation. Defendants . . . did conspire . . . to publish said statement in defendants' newspaper, knowing said statement to be false . . . as a direct and proximate result of which plaintiffs' right of privacy was thereby invaded."

Appellants did not name the San Francisco Chronicle, the

newspaper in which the alleged defamatory matter was published, as a party defendant. The demurrers of all individual defendants were sustained and judgment entered in their behalf. After entry of judgment for the individual defendants, the corporate defendant, Roberts Brothers Furs, successfully moved for summary judgment. This appeal challenges only the judgment entered in favor of the corporate defendant.

In support of its motion for summary judgment, respondent submitted certain interrogatories propounded to Kenneth R. Hobson, circulation director of the San Francisco Chronicle. Answers to these interrogatories disclose that the February 14, 1962, issue of the Chronicle was composed of six editions, issued at various times. These editions were: 1) Race edition, issued at 6:15 p.m. February 13, 1962; 2) 2-Star final edition, issued at 8:45 p.m. February 13, 1962; 3) 3-Star final edition, issued at 11 p.m. February 13, 1962; 4) First home edition, issued at 11:30 p.m. February 13, 1962; 5) Second home edition, issued at 12:45 a.m. February 14, 1962; 6) 4-Star final edition, issued at 2 a.m. February 14, 1962. The answers further disclosed that the objectionable matter appeared in all six editions of the newspaper, and that 7,000 to 8,000 copies of the newspaper dated February 14, 1962, had been sold to the public before 11:59 p.m. February 13, 1962.

The critical issue to be decided is whether appellants' alleged claims are barred by the statute of limitations.[1]

Appellants first point out that their complaint alleges a civil conspiracy, and that the gist of the tort of civil conspiracy is the damage resulting from the overt acts done pursuant to common design. (See *DeVries* v. *Brumback,* 53 Cal.2d 643, 649 [2 Cal.Rptr. 764, 349 P.2d 532].) Here they argue that overt acts were done on February 14, 1962, when at least two editions of the Chronicle were put out and sold to the public, resulting in damage to appellants. To support the contention that their action was brought in time, they cite and rely upon *Schessler* v. *Keck,* 125 Cal.App.2d 827 [271 P.2d 588], which holds, in effect, that while a conspiracy to defame is in existence the statute of limitations does not begin to run until there is a cessation of the wrongful acts committed in furtherance of the conspiracy. But here, as we have noted, the Chronicle is not a party defend-

---

[1]There is no dispute as to the applicable statute. It is Code of Civil Procedure section 340, subdivision 3, which, if controlling, operates to bar appellants' claims if not prosecuted within one year from the date the claims arose.

ant, nor is any agent or employee of the Chronicle a party. The only party with which we are here concerned is the respondent Roberts Brothers Furs, a corporation. It is not claimed by appellants that the Chronicle, or any of its agents or servants, was a party to the alleged conspiracy. This being so, it seems clear that the acts done by the alleged conspirators must have been completed before the first publication of the article complained of, since all publications of the material, in whatever edition they appeared, were the same. This would necessarily mean that appellants' causes of action, if based on a civil conspiracy, arose at the latest when the first publication of the newspaper was made on February 13, 1962, and hence their complaint filed February 14, 1963, was too late. But we need not rest our decision on this ground. As will appear, the action is governed by the California Uniform Single Publication Act (Civ. Code, §§ 3425.1-3425.5) and the provisions of that statute operate to bar the causes of action alleged in the complaint.

The Uniform Single Publication Act was proposed by the National Conference of Commissioners on Uniform State Laws. Its purpose is to make uniform the law of those jurisdictions that adopt it. (Civ. Code, § 3425.2.) The statute has been adopted in several states and the Canal Zone. Section 3425.3 of the act provides in part that "No person shall have more than one cause of action for damages for . . . invasion of privacy . . . founded upon any single publication . . . such as any one *issue* of a newspaper. . . ." (Italics ours.) As enacted in other jurisdictions, the language used to illustrate a single publication is ". . . such as one *edition* of a newspaper. . . ." (Italics ours.) The meager legislative history of the statute is found in the Assembly Final History,[2] and the Senate Journal of May 6, 1955. We may and do take judicial notice of both records, and their contents. It appears from the Assembly Final History that the statute was proposed as Assembly Bill 743 at the regular session of 1955, and that it was passed in the Assembly and sent to the Senate. The Senate Journal for May 6, 1955 reveals that the proposed statute was amended in the Senate on that day by striking out the word "edition" and inserting the word "issue", after which the bill was passed and returned to the Assembly, where the amendment was accepted. Our task is to determine what the Legislature meant and intended when it

[2]Final Calendar of Legislative Business, Regular Session 1955, California Legislature, page 433.

deleted the word ''edition'' and inserted in lieu thereof the word ''issue'' so that we may give the statute the effect intended by the Legislature. (See *Noble* v. *Key System, Ltd.*, 10 Cal.App.2d 132 [51 P.2d 887].) ▮ To this end we must construe ordinary words as having the meaning ordinarily attributed to them, but if it appears that an ordinary word has been used to convey some special or technical meaning then we must give such word or words the meaning intended.

The words ''edition'' and ''issue'' as commonly used do not appear to have any technical meaning. They are often used interchangeably. Nevertheless it appears to us that here the Legislature has chosen to attribute a technical or special meaning to both the word ''edition'' and the word ''issue'' and that in replacing one with the other the legislative body intended to discriminate between the two words and to use the word that would most accurately convey its intent.

The statute, as we have noted, limits a claimant to one cause of action for damages for ''. . . libel or slander or invasion of privacy . . . founded upon any single publication . . . of a newspaper or book or magazine. . . .'' The purpose of the statute is to abrogate the former rule, under which the sale of each copy of a newspaper or other publication containing libelous matter was deemed to give rise to a separate cause of action. (See *Duke of Brunswick* v. *Harmer* [1849] 14 Q.B. 185). The result of the former rule was to grant a litigant claiming to have been libeled, countless separate causes of action, together with virtual immunity from the bar of any statute of limitations. Thus, in considering the language used we must bear in mind that the statute is directed towards the elimination of multiple causes of action arising out of the publication of objectionable matter by newspapers, books and magazines. It becomes relevant, therefore, to consider whether the words ''edition'' and ''issue'' have a particular meaning in the newspaper and publishing field, or whether the words are synonymous.

▮ In Webster's New International Dictionary, Second Edition, in use at the time the statute here in question was adopted, a technical meaning is ascribed to the word ''issue'' as used in the field of journalism. The reference is found under the word ''edition'' which is defined as ''one of several printings of *an issue of a daily newspaper for a single day. . . .*'' (Italics ours.) This definition, applied here, would mean that the ''issue'' of the San Francisco Chronicle of February 14, 1962, was composed of the six

separate editions of the newspaper, some of which were in fact published and sold before midnight February 13, 1962.

We must also presume that the Legislature intended to accomplish some change in the meaning of the statute when it revised and altered the language after the proposal had passed the house of its origin. It appears to us that the Legislature intended to abrogate the right to bring a separate action based upon defamatory matter appearing in several editions of a newspaper or magazine, where, as here, all of the editions comprise a single issue of a particular date. If the words "edition" and "issue" are construed to be synonymous, then appellants would each have six separate causes of action, one based upon each edition of the newspaper containing the matter to which they object. Thus the change effected in the statute by the Senate amendment would be meaningless. We do not think that the Legislature, in revising the proposed statute, intended to engage in a vacant legislative exercise, but on the contrary intended its labors to have some effect.

Although we conclude that each of the appellants has but a single cause of action, we must yet say when their causes of action arose and determine whether they are barred by the statute of limitations.

The various editions of the Chronicle for February 14, 1962, comprise a single integrated publication, namely the issue of the newspaper for that date. As we have seen, the allegedly defamatory matter appeared in the first edition and was repeated without change in each and every edition that followed. It has generally been held that, in the case of a single, integrated publication, the cause of action based upon objectionable matter appearing in the publication accrues upon the first general distribution of the publication to the public. (*Hartmann* v. *Time, Inc.*, 166 F.2d 127.) In *Hartmann* the plaintiff alleged that he was libeled as the result of an article that appeared in the January 17, 1944, issue of Life magazine. Suit was filed January 17, 1945. A one year statute of limitations was applicable. Summary judgment was granted to the defendant upon a showing that the January 17, 1944, issue of Life had been distributed to the public on January 11, 1944. (See also, to the same effect, *Tocco* v. *Time, Inc.*, 195 F.Supp. 410; *Hazlitt* v. *Fawcett Publications, Inc.*, 116 F.Supp. 538; *McGlue* v. *Weekly Publications, Inc.*, 63 F.Supp. 744.) Here the statements alleged to be

an invasion of privacy appeared in various editions of the San Francisco Chronicle on February 13, 1962, although the newspaper bore the date February 14, 1962. Appellants' alleged causes of action arose therefore on February 13, 1962, when various editions containing the article to which they object were distributed to the public. The statute of limitations began to run against appellants when the first general distribution of the first edition of the Chronicle was made on February 13th. Although two editions of the Chronicle were published on February 14th, and these also contained the matter alleged to be an invasion of appellants' privacy, such publications did not give rise to separate causes of action, for under the Uniform Single Publication Act appellants each had but a single cause of action based upon the matter appearing in the entire issue of February 14th. Since a general distribution of that issue first took place on February 13, 1962, it necessarily follows that appellants' complaint, filed February 14, 1963, was too late and the statute of limitations has barred their claims.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 22, 1966.