[Civ. No. 8890.   Fourth Dist., Div. One.   Oct. 24, 1968.]

FREDERICK E. HOPPER, Plaintiff and Appellant, v. EDWARD J. ALLEN, Defendant and Respondent.

Frederick E. Hopper, in pro. per., for Plaintiff and Appellant.

William L. Mock, Rutan & Tucker, Milford W. Dahl, Jr., and Garvin F. Shallenberger for Defendant and Respondent.

BROWN (Gerald), P. J.—Defamation plaintiff, former Santa Ana Police Captain, Frederick E. Hopper appeals from a July 17, 1967, minute order granting defendant, Santa Ana

Police Chief, Edward J. Allen's summary judgment motion. The minute order is not appealable. Hopper filed his notice of appeal from the minute order on July 31, 1967, four days after the trial court filed summary judgment. We treat Hopper's appeal as if from the appealable July 27, 1967, judgment.

Hopper's amended complaint pleaded 9 causes of action. The trial court sustained demurrers to the second and fourth amended complaint causes of action. Plaintiff chose not to amend again. The trial court granted summary judgment on the remaining 7 causes of action. The motion for summary judgment urged: The fifth and ninth causes of action are barred by the statute of limitations; in each cause of action the alleged statements were either not made or were not defamatory; in each cause of action the statements, if made, were made in the scope of Allen's City of Santa Ana employment, and, therefore, Hopper should have filed a claim with the city before suing Allen; and, Allen had a constitutional right and privilege to make statements without actual malice.

"Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417; [42 Cal.Rptr. 449, 398 P.2d 785].)

We turn first to Allen's affidavits to test their sufficiency to sustain a judgment against Hopper's 7 remaining causes of action. Allen's affidavits establish the context, the atmosphere, out of which this lawsuit developed.

From September 1, 1950, to November 1964, Hopper was a Santa Ana policeman, a captain by 1964. In 1964, Allen discovered dissension within his police force, what he believed to be a conspiracy to topple his authority, composed mostly of John Birch Society members. In November 1964, Allen fired Hopper for failing to cooperate with superiors, and fired Officer Norton on similar grounds. Hopper and Norton re-

quested hearings before the City Personnel Board. After a hearing lasting a month or more, the board fined Hopper and reinstated him. Norton's hearing then took from five to six months, into early summer 1965. From the November 1964 firings through the 1965 hearings, local and national publicity focussed on Santa Ana's Police Department controversy. During the same period, of course, Chief Allen had the duty to maintain effective discipline within a splintered, operating public law enforcement agency. Against this background, we will consider Allen's defense founded in the Government Code claim statutes.

Hopper's amended complaint does not plead he filed, nor does it plead any excuse for failing to file, a claim with Allen's employer, City of Santa Ana. This necessarily bars suit against Allen for defamatory statements, if any, made while Allen acted in the course and scope of his employment as City of Santa Ana Police Chief. (Gov. Code, §§ 905, 911.2, 950.4, 950.2, 820.2; *Burgdorf* v. *Funder,* 246 Cal.App.2d 443 [54 Cal.Rptr. 805]; *Miller* v. *Hoagland,* 247 Cal.App.2d 57 [55 Cal.Rptr. 311]; *Tietz* v. *Los Angeles Unified School Dist.,* 238 Cal.App.2d 905 [48 Cal.Rptr. 245]; Code Civ. Proc., § 340; *Belli* v. *Roberts Bros. Furs,* 240 Cal.App.2d 284 [49 Cal.Rptr. 625]; Santa Ana Mun. Code, § 2330.)

"Succinctly stated, an employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform (citations), or when the act is an incident to his duty and was performed for the benefit of his employer and not to serve his own purposes or convenience. As stated in *Payne* v. *Industrial Acc. Com.,* 84 Cal.App. 657, 660 [258 P. 620] : '. . . acts incidental to his regular duties, if of benefit to the employer and not personal to the employee, are within the scope of his employment. . . .'" (*Burgdorf* v. *Funder, supra,* 246 Cal.App.2d 443, 448.)

Allen's affidavits set forth his employment duties. Santa Ana Police Department Rules and Regulations, adopted before January 1964, provide:

"1.5 THE CHIEF OF POLICE:

The Chief of Police is the chief executive officer of the Department, directly responsible for the efficient performance and effective accomplishment of the objectives for which the Department exists. He has the authority to exercise such powers delegated to his office for the general management of the Department as provided by statute, subject to the general administrative direction of the City Manager."

The Santa Ana City Manager, Carl J. Thornton, is the chief's immediate superior. Thornton's declaration recites: "It has been my policy ever since the defendant has been Chief of Police that he have full responsibility, supervision over and control of public relations of the Police Departmant [sic] image and he has always been empowered to give press releases or give interviews to the press when in his judgment he felt it advisable in furtherence [sic] of the objective of attempting to have good public relations and in attempting to promote a good image for the Police Department."

Hopper's first cause of action alleges Allen published a press release on March 15, 1965, saying:

(1) Hopper was a witch hunter;

(2) Hopper had joined a conspiracy to get something, anything, on the Chief;

(3) Hopper had secretly traveled to Ventura to encourage Officer Gullon to testify in Santa Ana that the Chief had ordered him to follow councilmen;

(4) Hopper attempted to persuade Gullon to testify against the Chief;

(5) Hopper arranged for the meeting without Allen's consent;

(6) Hopper was under orders not to leave the City while on duty;

(7) Hopper went behind Allen's back;

(8) Hopper's conduct was reprehensible; and

(9) Allen intended to take disciplinary action against Hopper.

This press release resulted in a Santa Ana Register newspaper article. As Allen declares, the term "Witch Hunt" is the newspaper's, not his. It does not appear in the article; it was in the article's headline, and was supplied by the newspaper. Rather than claim he intended to take disciplinary action against Hopper, the newspaper reported something entirely different: "The Chief said he is delaying taking action against Hopper and Hanson until he has 'all the facts'." Aside from allegations one and nine, Allen asserts he made the press release to further police public relations. At the time, public interest focused on the controversy and hearings. The chief had a right to put his version to the public. He had a duty, furthermore, to speak out with authority, to appear publicly strongly in charge of his department, maintaining public confidence that law enforcement authority was properly operating.

Hopper's third cause of action alleges Allen told reporters in March 1966:

(1) Hopper had joined a conspiracy that existed and still exists in the Department;

(2) Hopper had betrayed Allen;

(3) Hopper had publicly condemned Allen with lies;

(4) Hopper had participated in harrassment of the Chief and the Chief's family; and

(5) Hopper perjured himself at an Industrial Accident Commission hearing. The interview resulted in an article revealing the police controversy was still a problem in March 1966: "Today, Allen is caught in the middle of a two-year-old controversy that has embroiled the Santa Ana Police Department."

Like the earlier newspaper story, this article proves Allen made these statements as police chief attempting to clean up a two-year-old mess.

Rather than growing out of Allen's attempts to maintain public confidence in his department, Hopper's remaining five causes of action concern Allen's statements to subordinates.

In his fifth cause of action Hopper alleges Allen on March 15, 1965, told a police employee at the Santa Ana Police Building:

(1) Hopper is trying to get my job;

(2) Hopper wants to be Chief;

(3) Hopper is trying to get me just like he got the other chief; and

(4) The police employee was criticized for associating with Hopper. In his deposition, Hopper identifies Sergeant Curiale as his source of this information. Curiale's affidavit proves he had two conversations with Allen: One on March 4, 1965, from 3:35 to 4:20 p.m.; the other March 9, 1965, from 11:55 a.m. to 12:20 p.m. Curiale went to talk with Allen to complain about a critical report he found in his personnel jacket. Allen told him Hopper was dishonest and disloyal, not the statements alleged. Allen refused to take the report out of Curiale's personnel file. This interview clearly involved police business and Allen's relations with his subordinate Curiale. This cause of action, furthermore, is barred by the statute of limitations (Code Civ. Proc., § 340). Hopper filed his original complaint on March 14, 1966, more than one year after Allen talked with Curiale.

Hopper's sixth cause of action concerns Allen's alleged

statements at a captains and lieutenants staff meeting in April 1965:

(1) Hopper was the highest angel, dissatisfied with his position and fell because of unworthy ambition;

(2) Hopper was disloyal to his former Chief and Allen;

(3) Hopper was out to get Allen; and

(4) Birds of a feather flock together and Allen would judge all by whom they associated with. This is an example of Allen's controlling his subordinates. After Allen fired Hopper in November 1964, the Santa Ana Personnel Board fined Hopper and put him back under Allen's command. Distrusting Hopper, Allen gave him a desk job without command. Believing Hopper was a major troublemaker, and fighting dissidents weakening his force, Allen isolated Hopper with statements as alleged in order to preserve authority within and effectiveness throughout his police department. These statements were well within Allen's power as police chief to run hs department.

Hopper's seventh cause of action alleges Allen in June 1965 told police employees:

(1) Hopper is disloyal and dishonest; and

(2) Hopper is out to get me like he got the other Chief. This conversation took place at Santa Ana city hall immediately after Norton's reinstatement hearing. Allen's statements were responsive to an officer's asking why he had given Hopper a desk job without command. Again, the statements were part of Allen's official relations with his subordinates. One officer present declared there would be fewer department problems if Allen would talk to them like this more often.

Hopper's eighth cause of action alleges Allen in June 1965, told two persons, one a reporter: (1) Hopper is trying to get me fired just like he got the other Chief. Mrs. Boer's deposition reveals she heard the remark at a personnel board hearing for Lt. Norton at city hall. Mrs. Boer, active in political controversy, after the hearing went to Allen and asked, in substance, why he kept insisting these officers were out to get him. Allen's response was incident to his appearance there as Police Chief.

Hopper's ninth cause of action alleges Allen in July 1965, told a police employee:

"Hopper is Lucifer; he was the brightest of angels and then became dissatisfied with his own position and wanted to be chief; he disaffected others and joined in a conspiracy to oust the chief; Hopper is 'Brutus', the man closest to the chief with the biggest knife; he's trying to cut the chief's

throat and occupy the chief's chair; Hopper and Pemberton were out to get rid of the chief, the same way they got rid of Chief Hershey; they were disloyal to Chief Hershey and are disloyal to me; that he knew Hopper's ability, but would not return him to a position of command as he was untrustworthy; Hopper is a liar and a perjurer; Hopper is responsible for the pranks that are being played on him; he had isolated Hopper and he was going to keep him isolated; he was like a communicable disease that had to be quarantined or he would infect the whole department. In response to a question as to why he had discontinued the making of coffee in the Identification Section of the Department which had been a custom and practice for fifteen years, defendant replied: You know why. I've made it clear that people will be judged by whom they associate with. Birds of a feather flock together. Hopper has made a practice of going there for coffee. Now that the I.D. people have been deprived of their privilege, perhaps Hopper will be less welcome. He should be. I have no wish to punish them, but they brought this exercise of the chief's arbitrary powers on themselves. You would do well to heed this advice and stop associating with Hopper. He can't help you. The chief is the only person with the power to reward and punish in this department. If you continue to associate with Hopper, you will be judged accordingly. He's no good. He betrayed me. One of these days a prospective employer of his will contact me and I'll do anything in my power to keep him from ever gaining employment. Carl stopped Hal Hanson from getting a job in Brea and I'll do at least that much for Mr. Hopper.''

Hopper's deposition identifies police employee Hanson as the source of this information. Hopper's deposition proves the statements were made in Allen's office while Hanson was there for a ''What's wrong in the Department'' discussion. At the discussion Allen asked for Hanson's suggestions for running the department. The statements, in other words, were made by Allen to maintain his internal control over his officers and were within the scope of his authority. This cause of action, furthermore, appearing in the amended complaint, was not pleaded in the original complaint. Hopper filed the amended complaint August 30, 1966. Allen made the statements to Hanson in July 1965. This cause of action, therefore, is barred by the statute of limitations (Code Civ. Proc., § 340).

We refer now to Hopper's affidavits to determine whether he raises any issues of fact regarding the statute of limitations and Government Code claim defenses discussed. In his personal declaration filed May 19, 1967, Hopper states he was and is of the opinion and belief Allen acted outside the scope of his employment. This conclusionary statement on opinion and belief is wholly inadequate to raise any factual issues (Code Civ. Proc., § 437c). In his declaration, filed July 18, 1967, he asserts Allen fired him and Norton in November 1964, and then summarizes parts of Allen's deposition, stressing: Allen believed Hopper was part of a conspiracy to oust him.; Allen believed this in March 1966; after Hopper's reinstatement, Allen said Hopper lied under oath, was untrustworthy, and would have to be watched; Allen at various times and places accused Hopper of conspiracy; etc. Hopper's effort in this declaration is directed to prove Allen made defamatory statements. The declaration in no way raises any factual issues regarding the statute of limitations or the question whether Allen acted within the scope of his employment.

In another declaration filed July 18, 1967, Hopper, on information and belief, argues the police regulations quoted above were not published until late in 1966. His assertion regarding the rules is neither adequately stated nor important. The rules quoted merely codify general powers naturally exercised by a police chief. Hopper devotes the rest of this declaration describing Allen's relations with others. The presentation is totally irrelevant.

Because Hopper's declarations fail to raise any factual issues regarding the statute of limitations. and Government Code claim defenses Allen adequately sets forth supporting his summary judgment motion, we need not discuss Allen's remaining asserted defenses.

Judgment affirmed.

Coughlin, J., and Whelan, J., concurred.

A petition for a rehearing was denied November 13, 1968, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1968.