102 Cal.Rptr.2d 138 (2000)
85 Cal.App.4th 363
Jill SHIVELY, Plaintiff and Appellant,
v.
Peter BOZANICH, as Deputy District Attorney, etc., et al., Defendants and Respondents.
Jill Shively, Plaintiff and Appellant,
v.
Brian Patrick Clarke, Defendant and Respondent.
Nos. B130905, B133983.
Court of Appeal, Second District, Division Three.
December 8, 2000.
Review Granted March 28, 2001.
*139 Hill & Hill, Monique Shana Hill and Gregory Hill, Playa Del Rey, for Plaintiff and Appellant.
Franscell, Strickland, Roberts & Lawrence and Cindy S. Lee, Pasadena, for Defendants and Respondents Peter Bozanich and County of Los Angeles.
No appearance for Defendant and Respondent Brian Patrick Clarke.
CROSKEY, J.
In another civil case arising out of the criminal trial of O.J. Simpson, Jill Shively (plaintiff) sued a number of persons, including Deputy District Attorney Peter Bozanich (Bozanich), the County of Los Angeles (County), and plaintiffs alleged former boyfriend, Brian Patrick Clarke (Clarke) (sometimes collectively defendants) for slander. The alleged slander was first discovered by plaintiff following publication of a book about that trial.[1]
Judgment was entered against plaintiff on all of her causes of action against these three defendants following Clarke's successful demurrer to all of plaintiffs causes of action against him, and Bozanich's and County's successful motion for summary judgment. Plaintiff appeals.[2]
We reverse both judgments, because the trial court erroneously held that the discovery rule did not apply to prevent the statute of limitations from accruing until plaintiff knew or should have known she had been defamed. We conclude that not only does the discovery rule apply to toll the running of the statute of limitations in defamation cases, it also applies when the defendant's alleged defamatory statement is republished in a mass media publication.

*140 FACTUAL AND PROCEDURAL BACKGROUND[3]
Plaintiff was mentioned in author's book. Among the things said of plaintiff in the book, and the statement over which she was to sue, was that "[s]he's a felony probationer" (the words).[4]
On October 22, 1997, plaintiff filed a complaint for damages for libel and slander against defendants, author, and publisher. She alleged that the words were slanderous and libelous per se because they necessarily accused her of having committed some felony (a crime), and because they were untrue.
Clarke was alleged to have spoken the words on or about June 1994, and the words were alleged to have been published to, in other words, heard by, Bozanich and his wife, Ferrero. This publication constituted the basis for plaintiffs first cause of action for slander against Clarke.
Bozanich, in a separate publication of his own (which also constituted a republication by Clarke) was alleged, "on or about 1996," to have spoken the words to the author, and to have done so within the scope of his employment by County. This publication constituted the basis for the second cause of action (for slander against Bozanich), the third cause of action (for slander against County under an agency theory of liability), and the fourth cause of action (against Clarke for slander, based on the principle that Clarke could have foreseen *141 that Bozanich would repeat the defamatory statement to others).
Author and publisher were alleged to have published the defamatory words when, "[o]n or about December 1996," they "published" the book containing the words, thus causing the words to be read by many people in and around Los Angeles. This publication constituted the basis for the fifth cause of action (for libel against publisher and author), the sixth cause of action (against Clarke for slander), the seventh cause of action (against Bozanich for slander), and the eighth cause of action (against County for slander). The sixth, seventh and eighth causes of action against defendants, like the fourth cause of action against Clarke, were all based on the principle that the republication of Clarke's and Bozanich's defamatory statements by author and publisher was reasonably foreseeable.
Of particular importance to this appeal, the complaint also specifically alleged, as to each cause of action, that plaintiff did not, and could not have, become aware that, vis-à-vis Clarke, Bozanich, and County, the words had been spoken, published by others, and republished until they were republished in the book.
Clarke demurred to the first cause of action only. The only ground for Clarke's demurrer was that the causes of action against him were barred by the one-year statute of limitation. (Code Civ. Proc. § 340, subd. (3).) In connection with his demurrer, he asked the court to take judicial notice of a declaration filed by publisher and author in support of publisher and author's earlier motion to strike plaintiffs single cause of action (the fifth cause of action) against them. That declaration, signed by publisher's vice president and director of sales, Michael Murphy, stated that by October 21, 1996, 6,613 copies of A Problem of Evidence were for sale on bookstore shelves in California.[5]
The legal significance of the information in Murphy's declaration was that it related to the "publication date" of the book.[6] The publication date, in turn, was argued by Clarke to be the date upon which plaintiffs cause of action for defamation against him for his publication to Bozanich had accrued, and hence the date from which the statute of limitations ran. Because plaintiffs complaint was not filed until October 22, 1997, Clarke argued that, whether the publication date was September 5, 1996 (the first date of shipping the books to California), or October 21, 1996, plaintiffs complaint was untimely, having been filed either a bit over six weeks late, or a day late.
Not surprisingly, given the layers of publications of the defamatory words, Clarke's demurrer rested on multiple arguments, all of which, however, related to the statute of limitations. Clarke argued that plaintiffs cause of action was barred because he allegedly spoke the words more than three years before the complaint was filed. He also argued that he was not alleged to have published the book, and that the book's distribution to the general public, in other words, its publication date, was more than one year before the complaint was filed.
Plaintiff, of course, raised the discovery rule as a defense to the statute of limitations as to the first cause of action, because *142 Clarke's demurrer was addressed only to the first cause of action. As discussed below, the discovery rulethat a cause of action does not accrue until the plaintiff knows, or has reason to know, that he or she has been injuredis applicable to causes of action for libel and slander committed by non-mass media (as opposed to mass media) defendants. An unresolved question, however, is whether the discovery rule applies to the accrual of a cause of action against a non-mass media defendant when there has been a republication of the defendant's defamatory remark by a mass media defendant.
The trial court took judicial notice of the facts contained in Murphy's declaration on the ground that they were facts not reasonably in dispute. (Evi.Code, § 452, subd. (h).)[7] It also refused to "extend" the discovery rule (sometimes called the rule of delayed discovery) to plaintiffs causes of action for slander, because the primary case on which plaintiff relied, Manguso v. Oceanside Unified School Dist. (1979) 88 Cal.App.3d 725, 729-730, 152 Cal.Rptr. 27 (Manguso), supposedly involved only libel. It then sustained Clarke's demurrer to the first cause of action without leave to amend.
Clarke subsequently made a request for "clarification" of that order. This request, however, was not actually a request for clarification. Instead, it was the vehicle by which Clarke sought to obtain an order sustaining a demurrer that he never filed to two causes of action he had not addressed in his demurrer.[8] Over plaintiffs objections, the trial court then sustained, without leave to amend, Clarke's demurrer to the fourth and sixth causes of action. A judgment was entered against plaintiff in favor of Clarke.
County and Bozanich filed a motion for summary judgment, and also used the Murphy declaration, with its attached shipping records, as a basis for such motion. County and Bozanich, too, used the statute of limitations as one ground for their motion for summary judgment. They also urged as a ground for the granting of judgment in their favor that plaintiff had failed to timely comply with the requirements of the Tort Claims Act. (Gov.Code, §§ 901 et seq.)
County and Bozanich's evidence showed that plaintiff had filed a claim with County regarding Bozanich's publication of the words on May 12, 1997, and that her claim was denied. Plaintiffs evidence, consisting of her declaration, stated that she had *143 not read the book and discovered the words until December 1996.
On December 17, 1998, the trial court granted Bozanich's and County's motion for summary judgment. In its minute order granting the motion, it found that the dates set out in Murphy's declaration were undisputed. Implicit in its order was the conclusion that the discovery rule did not apply to toll the accrual of plaintiffs causes of action against Bozanich and County. Judgment was entered accordingly.

CONTENTIONS ON APPEAL
Plaintiff contends that the discovery rule applies to defamation in general, and slander in particular, and that it specifically applies to the oral statements that Clarke made to Bozanich, and Bozanich made to author. Furthermore, she contends that the mere fact that those oral statements were republished in the book, a mass media publication, does not prevent the discovery rule from applying so as to toll the accrual of the statute of limitations on her causes of action against non-mass media defendants Clarke, Bozanich, and County. Defendants dispute these contentions.[9]

DISCUSSION
There are two principal issues raised by this appeal: (1) Does the discovery rule apply to toll the accrual of a cause of action for defamation based on a publication by a "non-mass media" defendant,[10] whose defamatory remarks only come to a plaintiffs attention as the result of the republication of such remarks in the mass media? (2) Does the discovery rule apply to toll the accrual of a cause of action for defamation against a non-mass media defendant based on the republication, in a "mass media" publication by a "mass media" defendant, of the non-mass media defendant's original defamatory remarks?

1. General Rules Related to Statutes of Limitation, Including The Discovery Rule and the Doctrine of Fraudulent Concealment

The "periods prescribed for the commencement of actions other than for the *144 recovery of real property" are found in section 335 through 349.4 of the Code of Civil Procedure. (Code Civ. Proc., § 335.)[11] The period within which a defamation action must be commenced is found in these code sections; an action for "libel" or "slander" must be commenced "[w]ithin one year[.]" (§ 340, subd. (3).)[12]
Although the Code of Civil Procedure does not itself make reference to the concept of "accrual" (Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) 6 Cal.3d 176, 179, 191 and fn. 30 at p. 191, 98 Cal.Rptr. 837, 491 P.2d 421 (Neel)), all statutes of limitation run from the date of the "accrual" of the cause of action. "The general rule for defining the accrual of a cause of action sets the date as the time `when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent `liability arises. . . .' [Citation.] In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations]the elements being generically referred to by sets of terms such as `wrongdoing' or `wrongful conduct,' `cause' or `causation,' and `harm' or `injury' [citations]." (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (Norgart).)
The discovery rule is the most important exception to the general rule defining the accrual of a cause of action. (Norgart, supra, 21 Cal.4th at p. 397; 87 Cal. Rptr.2d 453, 981 P.2d 793 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 463, p. 583.) The discovery rule effectively "lengthens" a statute of limitation by postponing the accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (Norgart, supra, 21 Cal.4th at p. 397; 87 Cal. Rptr.2d 453, 981 P.2d 793 Witkin, Cal. Procedure, supra, Actions, § 463, p. 583; see Neel, supra, 6 Cal.3d at p. 179, 98 Cal.Rptr. 837, 491 P.2d 421 [legal malpractice action; court postponed accrual "until the [plaintiff] discovers, or should discover, his [or her] cause of action"].) A plaintiff discovers the cause of action when he or she at least suspects a factual basis for the elements of a cause of action, even if he lacks knowledge thereof; when, in other words, the plaintiff "at least `suspects . . . that someone has done something wrong'" to him or her. (Norgart, supra, 21 Cal.4th at pp. 397-398, 87 Cal.Rptr.2d 453, 981 P.2d 79; Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1110, 245 Cal.Rptr. 658, 751 P.2d 923 (Jolly).) A plaintiff has reason to suspect when he or she has notice or information of circumstances sufficient to put a reasonable person on inquiry. (Norgart, supra, 21 Cal.4th at p. 398, 87 Cal. Rptr.2d 453, 981 P.2d 79; Jolly, supra, at pp. 1110-1111, 245 Cal.Rptr. 658, 751 P.2d 923.)
The discovery rule may be expressed by the Legislature or implied by the courts. (Norgart, supra, 21 Cal.4th at p. 397;, 87 Cal.Rptr.2d 453, 981 P.2d 793 Witkin, Cal. Procedure, supra, Actions, § 463, p. 583.) Thus, for example, the Legislature adopted both Code of Civil Procedure sections 340.5, and 340, subdivision *145 (3). Section 340.5 deals specifically with actions for malpractice against health care providers, and expressly states that the one-year period commences on "the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first," In contrast, Code of Civil Procedure, section 340, subdivision (3), the more general provision for the limitations period for personal injury, simply states that an action for "injury to or for the death of one caused by the wrongful act or neglect of another" must be brought "within one year."
Although the Legislature did not expressly include the discovery rule as a component of section 340, subdivision (3), the courts have implied a discovery rule component into many, if not all, of the torts enumerated in section 340, subdivision (3), as well as into other statutes of limitation which do not expressly include the rule. (See, e.g., Moonie v. Lynch (1967) 256 Cal.App.2d 361, 64 Cal.Rptr. 55 [accountant malpractice cases]; Huysman v. Kirsch (1936) 6 Cal.2d 302, 306-313, 57 P.2d 908 [medical malpractice]; Marsh v. Industrial Acc. Com. (1933) 217 Cal. 338, 351, 18 P.2d 933 [progressive occupational illness]; Neel, supra, 6 Cal.3d at p. 190, 98 Cal.Rptr. 837, 491 P.2d 421 [attorney malpractice]; Jolly, supra, 44 Cal.3d at p. 1109, 245 Cal.Rptr. 658, 751 P.2d 923 [personal injury caused by defective drugs]; Cain v. State Farm Mut. Auto. Ins. Co. (1976) 62 Cal.App.3d 310, 315, 132 Cal. Rptr. 860 [invasion of privacy]; Manguso, supra, 88 Cal.App.3d 725, 731, 152 Cal. Rptr. 27 [libel]; Oakes v. McCarthy Co. (1968) 267 Cal.App.2d 231, 255, 73 Cal. Rptr. 127 [underground trespass]; Arthur v. Davis (1981) 126 Cal.App.3d 684, 691-692, 178 Cal.Rptr. 920 [slander of title, § 338, subd. 7]; Bristol-Myers Squibb Co. v. Superior Court (1995) 32 Cal.App.4th 959, 38 Cal.Rptr.2d 298, disapproved on other grounds in Norgart, supra, 21 Cal.4th at p. 410, fn. 8, 87 Cal.Rptr.2d 453, 981 P.2d 79 [medical products liability, § 340, subd. (3)].)[13]
Two common themes run through the cases applying the discovery rule. First, it is applied to types of actions in which "it will generally be difficult for plaintiffs to immediately detect or comprehend the breach or resulting injuries"when the injury is hidden or beyond the plaintiffs reasonable comprehension. (Evans v. Eckelman (1990) 216 Cal.App.3d 1609, 1614-1615, 265 Cal.Rptr. 605; Bemson v. Browning-Ferris Industries (1994) 7 Cal.4th 926, 931, 30 Cal.Rptr.2d 440, 873 *146 P.2d 613 (Bernson).) Second, it is applied when the plaintiff and defendant are in a confidential or fiduciary relationship. (Bernson, supra, 7 Cal.4th at p. 931, 30 Cal.Rptr.2d 440, 873 P.2d 613.)
Although the discovery rule is the most important exception to the general rule defining the accrual of a cause of action, it is not the only means by which a plaintiff may avoid a statute of limitations which, if treated merely as a straightforward passage of a fixed amount of time, has "expired." One such other means is another judicially created rule, the "doctrine of fraudulent concealment." The discovery rule is applicable when a plaintiff does not know, and has no reason to know, that he or she has any cause of action against anyone. The doctrine of fraudulent concealment, in contrast, applies when the plaintiff does know, or has reason to know, that he or she has a cause of action, but, because some tortfeasor has intentionally concealed its role in the commission of the tort, does not know that he or she has a cause of action against that particular potential defendant.
Unlike the discovery rule, the doctrine of fraudulent concealment does not affect the accrual (in other words, the starting point of the running of the statute of limitations) of a cause of action.[14] Rather, after the statute of limitations has expired, it estops a defendant who, for example, has intentionally concealed his or her identity as a defamer from relying on the statute of limitations as a defense to what would otherwise be a stale claim. (Regents of University of California v. Superior Court (1999) 20 Cal.4th 509, 533, 85 Cal.Rptr.2d 257, 976 P.2d 808 (Regents ); Bernson, supra, 7 Cal.4th at p. 932, 30 Cal.Rptr.2d 440, 873 P.2d 613.) The purpose of the doctrine of fraudulent concealment is "to disarm a defendant who, by his [or her] own deception, has caused a claim to become stale and a plaintiff dilatory. [Citations.]" (Regents, supra, 20 Cal.4th at p. 533, 85 Cal.Rptr.2d 257, 976 P.2d 808.)[15]

2. Application of the Discovery Rule and Doctrine of Fraudulent Concealment to the Tort of Defamation

We turn now to the particular tort here involved, the tort of defamation. Defamation can be either written (libel) or oral (slander). The one-year statute of limitations applicable to actions for libel and slander runs from the utterance or publication of the defamatory matter. (§§ 335, 340; Weiner v. Superior Court (1976) 58 Cal.App.3d 525, 529, 130 Cal.Rptr. 61; see Bernson, supra, 7 Cal.4th 926, 932, 30 Cal.Rptr.2d 440, 873 P.2d 613 [a cause of *147 action for libel generally accrues when the defamatory matter is published]; Strick v. Superior Court (1983) 143 Cal.App.3d 916, 922, 192 Cal.Rptr. 314 [same; publication date of magazine was distribution date of magazine].) Under the discovery rule, however, the running of the limitation period will be tolled until the plaintiff has discovered, or has reason to suspect, the existence of the defamatory matter. (Schneider v. United Airlines, Inc. (1989) 208 Cal.App.3d 71, 77, 256 Cal.Rptr. 71 (Schneider) [libel]; Manguso, supra, 88 Cal.App.3d 725, 152 Cal.Rptr. 27 [libel]; McNair v. Worldwide Church of God (1987) 197 Cal.App.3d 363, 379, 242 Cal. Rptr. 823 [libel and slander] (McNair); see also Cain v. State Farm Mut. Auto. Ins. Co., supra, 62 Cal.App.3d 310, 314-315, 132 Cal.Rptr. 860 [claim for violation of right to privacy accrues upon discovery of the invasion].)
The doctrine of fraudulent concealment, too, has been applied to defamation claims because the essential purpose of the doctrine is consistent with the purpose behind the statute of limitations. (Bernson, supra, 7 Cal.4th at pp. 937-938, 30 Cal. Rptr.2d 440, 873 P.2d 613.) The purpose behind most statutes of limitations is a simple one: to protect defendants from the stale claims of dilatory plaintiffs. (Id. at p. 935, 30 Cal.Rptr.2d 440, 873 P.2d 613.) The purpose of the doctrine of fraudulent concealment, as noted above, is to deny a defendant any advantage obtained by the fraudulent concealment of his or her identity as a tortfeasor. (Id. at pp. 933-934, 30 Cal.Rptr.2d 440, 873 P.2d 613.)
We have found no California case which has held that either the discovery rule, or the doctrine of fraudulent concealment, cannot be, or should not be, applied to the tort of defamation, whether the defamation is oral (slander) or written (libel), when such tort is committed by a non-mass media defendant. To the contrary, the discovery rule has been applied to causes of action for both slander and libel (Schneider, supra, 208 Cal.App.3d 71, 256 Cal.Rptr. 71 [libel]; Manguso, supra, 88 Cal.App.3d 725, 152 Cal.Rptr. 27 [libel]; McNair, supra, 197 Cal.App.3d 363, 379, 242 Cal.Rptr. 823 [libel and slander].)
So, too, we have found no case that has ever held the discovery rule or the doctrine of fraudulent concealment is not available for the benefit of a plaintiff whose cause of action against a non-mass media defendant is based on an original publication, by a non-mass media defendant, that subsequently was evidenced in a republication in the mass media.

3. The Effect of the Republication of the Non Mass Media Defendants' Defamatory Statements in a Mass Media Forum

As noted above, once a defamatory statement has been uttered (i.e., once a cause of action for defamation has accrued), the statute of limitations within which to bring an action will normally be tolled until the plaintiff knows or has reason to know he or she has been defamed. In this case, however, because the words were republished in a mass media forum (the book), the defendants urge that, as to the causes of action against them, the statute of limitations should not be tolled by application of the discovery rule. Instead, they contend, the statute of limitations as to such causes of action should run, without tolling, from the "`first general distribution of the publication to the public'" (McGuiness v. Motor Trend Magazine (1982) 129 Cal.App.3d 59, 61-62, 180 Cal. Rptr. 784 (McGuiness ) quoting Belli v. Roberts Brothers Furs (1966) 240 Cal. App.2d 284, 49 Cal.Rptr. 625 [which cited Hartmann v. Time (3d Cir.1947) 166 F.2d 127; Tocco v. Time, Inc. (E.D.Mich.1961) 195 F.Supp. 410; Hazlitt v. Fawcett Publications, Inc. (D.Conn.1953) 116 F.Supp. 538; McGlue v. Weekly Publications, Inc. (D.Mass.1946) 63 F.Supp. 744], and citing Annot. (1972) 42 A.L.R.3d 807, 811, 822-825; Khaury v. Playboy Publications, Inc. (S.D.N.Y.1977) 430 F.Supp. 1342.) In other words, the discovery rule should not *148 apply when a defamation has been republished in a mass media forum.
The case upon which defendants principally rely, McGuiness, supra, involved a defamatory statement published in a mass media forum by a mass media defendant. The plaintiff, McGuiness, argued that the discovery rule should apply to toll the running of the statute of limitations. The appellate court, however, concluded that the statutory period had run from the date of publication, because there was no concealment of the defamatory statement, which was published in a nationally distributed magazine widely available to the public, including the plaintiff.
In McGuiness, the plaintiff contended that the statute of limitations should not be calculated as having begun to run until the date that he actually discovered the libel in the magazine. He cited Manguso and Tom Olesker's Excit. W., etc. v. Dun & Bradstreet, Inc. (1975) 61 Ill.2d 129, 334 N.E.2d 160 (Olesker). The McGuiness court disagreed, stating, "These cases are readily distinguishable. In Manguso, the libel was in a letter which was placed by a supervisor in the plaintiffs confidential permanent personnel file, of which the plaintiff did not learn for 16 years. In Olesker, the libel was a credit report distributed to a subscriber on a confidential basis. In those cases the libel was committed in an inherently secretive manner. They have no application to a public libel in a nationally distributed magazine widely available to the public, including the plaintiff." (McGuiness, supra, 129 Cal.App.3d at p. 62, 180 Cal.Rptr. 784.)
In short, McGuiness simply assumed its conclusion. In effect, it held that where the publication of a defamatory matter occurs under circumstances where the injured plaintiff is not likely to become aware of it, then the discovery rule may be applied to toll the running of the statutory period. But where the publication of the defamatory matter occurs in the mass media, the plaintiffs immediate discovery will be presumed as a matter of law. In other words, the essentially factual question of whether a plaintiff had, or should have, discovered the publication of a defamatory statement is taken from the jury and resolved by the court as a matter of law. McGuiness, however, provides no rationale or analysis as to why such a presumption is appropriate, nor have defendants succeeded in filling this analytic gap.
We see no reason that the discovery rule should not be applied to toll the running of the statute of limitations on causes of action for defamation, even when the defamatory remarks have been republished in the mass media. The concept of "mass media" is broadly applied to include any publication, no matter how obscure or limited in distribution or reception. Thus, a plaintiffs opportunity to become aware of a defamatory statement is a relative one which is heavily dependent upon the particular circumstances. For example, the likelihood of discovery of a defamatory statement published on the front page of the local newspaper is significantly different from that of a similar statement contained in the middle of an obscure book with a relatively infinitesimal circulation. Moreover, as noted above, all causes of action "accrue" when the injury or wrongful act takes place, and yet the discovery rule applies to toll the running of the statutory period as to many different causes of action. It should do so here.
There is nothing about this tort, or the way in which it came to the plaintiffs attention, which merits any different application of this basic exception to the accrual of the statute of limitation. Therefore, we conclude that the better view is to treat the issue of when plaintiff knew, or should have known, that defendants had defamed her, as one for the trier of fact to resolve, regardless of whether or not the defamation came to the plaintiffs attention when she saw it in a mass media publication.[16]
From a practical point of view, applying the discovery rule to claims against non-mass *149 media defendants, whose defamatory statements were republished in the mass media, should be no more difficult than applying it in the other situations in which it arises. The trier of fact will simply consider the evidence as to the delayed discovery, and decide whether plaintiffs reasons therefore are believable. The fact that a defamatory comment has been published in the mass media, as well as the nature of the mediaa daily newspaper, a slim volume of self-published poetry, a high school playwill all be factors relevant to whether a plaintiff knew or should have known he or she had a cause of action. (See, e.g., McKelvey v. Boeing of North American, Inc. (1999) 74 Cal. App.4th 151, 160-161, 86 Cal.Rptr.2d 645 [when plaintiffs knew of public notices and newspaper articles that contained information about defendant's intentional, reckless and negligent conduct, it was incumbent upon them to allege facts showing why these items did not put them on notice for purposes of the accrual of a cause of action].) In other words, the fact that the defamatory statement was known to large segments of the general population would relate to whether the trier of fact believed a plaintiff who claimed not to have discovered the libel or slander until sometime after it was first published in the mass media.
We therefore hold that the discovery rule can be applied to toll the running of the statutory period for defamation against non-mass media defendants, even though the fact of the initial defamation is brought to light in a mass media publication.

4. The Tort Claim Requirement

As noted above, County and Bozanich moved for summary judgment on the alternate ground that plaintiffs causes of action were barred because of her failure to file a timely tort claim. The Tort Claims Act requires that a claim be filed with the County within six months of accrual of the cause of action. (Gov.Code, § 911.2; Zuniga v. Housing Authority (1995) 41 Cal.App.4th 82, 100-101, 48 Cal. Rptr.2d 353.)[17] For the purpose of computing the time limit prescribed, Government Code section 901 provides that the date of accrual of a cause of action to which a claim relates is the date upon which the cause of action accrued within the meaning of the applicable statute of limitations. (Gov.Code, § 901; Flahavan, et al, California Practice Guide: Personal Injury (The Rutter Group, 1998), ¶ 5:18.) In other words, if the underlying statute of limitations is tolled because the plaintiff does not know, and has no reason to suspect, she has been injured, then the time limit within which a claim must be filed is tolled as well. (Whitfield v. Roth (1974) 10 Cal.3d 874, 885-887, 112 Cal.Rptr. 540, 519 P.2d 588, superseded on another ground by statute, see § 340.5 and Katz v. Children's Hosp. of Orange County (9th Cir. 1994) 28 F.3d 1520, 1525-1526; Dujardin v. Ventura County Gen. Hosp. (1977) 69 Cal.App.3d 350, 355-357, 138 Cal.Rptr. 20.)
Because we hold that the running of the statutory limitations period for defamation first brought to the plaintiffs attention in a mass media publication, or which involved a republication in a mass media publication, may be tolled by the discovery rule, it follows that the time *150 within which plaintiff had to file her tort claim was similarly tolled. (Gov.Code, § 901 [for purposes of computing the time limit within which to file a tort claim, "the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon"].)

CONCLUSION
The judgments in favor of defendants were all dependent on the inapplicability of the discovery rule. Because we conclude the discovery rule may be applied, the judgments must be reversed. Although defendants alleged the defamatory statements were made several years before plaintiff filed her action, the running of the statute of limitations was tolled until plaintiff knew, or had reason to know, that they were made and by whom. Thus, there is a triable issue of fact as to whether the republication of defendants' allegedly defamatory statements in author's book was, under all of the circumstances, sufficient to put plaintiff on reasonable notice that defendants had defamed her. Until plaintiff had such notice, the running of the statute was tolled.

DISPOSITION
The judgment in favor of Brian Patrick Clarke is reversed. The judgment in favor of County and Bozanich is reversed. Plaintiff is awarded her costs on appeal against all defendants jointly and severally.
KLEIN, P.J., and ALDRICH, J., concur.
NOTES
[1] Plaintiff also sued Joseph Bosco (author), the author of a book, A Problem of Evidence (the book), and William Morrow & Company (publisher), the publisher of that book. The book was about the criminal trial of Orenthal James (O.J.) Simpson, who was tried for the murder of Nicole Brown.
[2] Plaintiff appealed separately from the judgment of dismissal rendered in favor of Clarke and the summary judgment entered in favor of Bozanich and the County.
[3] The facts are taken from the Clerk's and Reporter's Transcripts.
[4] How the various defendants allegedly were involved in the publication of this statement becomes apparent when the words are read in context:

"Of course, the grand-jury dismissal itself, basically unheard of in these parts, or anywhere else with a grand-jury system for that matter, is extremely interestingthe truth about it, that is. What very few folks know is that the District Attorney's Office, in the words of one who was in that grand-jury room, had a `runaway grand jury on its hands'; it would only `consider indicting on manslaughter.' The grand jury also kept asking troublesome questions about how the suspect could do all that he was supposed to by himself in the short amount of time, [¶] Peter Bozanich tells a story about those grand-jury days: `You remember Jill Shively? She said she saw O.J. in the Bronco driving away from the crime scene. The prosecution said she wouldn't be called because she sold her story to Hard Copy? [¶] That's not true; that's not what happened. What actually happened was the day that Shively testified before the grand jury and said she saw Simpson there, I was out to dinner with my wife [Pam Ferrero, prosecutor in the Menendez trials] and we came home and there were a couple of messages on the answer machine. There was a lunatic, or what sounded like a lunatic, on the answer machine saying, "Pam! Pam! You've gotta call me, that bitch, that goddamn bitch!" and everything else. I'm going, "What the hell is that?" And the message ended, and there was a second message, from the same guy. So I asked my wife, "Who in the hell is that?" She said, "Brian Patrick Clarke." I said, "Who's that?" She said, "He was my former brother-in-law." My wife's ex-husband's sister was married to this guy. This guy is an actor. He's a soap opera actor. He's on television a lot.
"`So she gets on the phone and calls Brian, and Brian says "Jill is not a jogger"he had seen her on Hard Copy"she's two hundred pounds. She couldn't find her way to Brentwood. She's a liar. She's a felony probationer. She's got lawsuits going every place and she is not telling the truth. She has sued me; I've sued her, I've recovered . . ." and blah-blah-blah. This guy Brian is a real goodlooking guy, and she's a slob. [¶]
"`The phone call's over and my wife tells me this. I say, "Well, I'd better tell Bill [Hodgman]." So I went in the next day and went to Hodgman and Marcia, and I said, "Your star witness is a piece of shit. You'd better check her out. She's on some felony probation in Santa Monica." They checked her out. And they went to the grand jury that day and said, "Never mind." That's when the grand jury apparently went south. So all that stuff about not using her because she sold her story is not trueshe did sell her story, but that was an excuse. They just put on a witness who was probably as bad as Gerchas [Mary Ann Gerchas, who Johnnie Cochran promised in his opening statement would testify for the defense that she saw four men running away from the crime scene]. That was the P.R. of this case. It was that kind of thing which I think caused the case to go south early.'" (A Problem of Evidence, pp. 8-9.)
[5] According to Murphy, almost 36,000 copies of the book were shipped to the United States and Canada from September 5, 1996 through December 31, 1996. Between September 5 and October 21, 1996, 6,867 copies were shipped to California alone. Of those 6,867 books shipped to California, 6,613 were on "sale" no later than one year and one day before the date plaintiff's complaint was filed. Murphy's declaration did not make any attempt to give a breakdown of where in California any particular number of books were on sale by that date.
[6] In the interest of clarity, we will refer to the publication date of a bookthe day upon which it is released to the publicas "the publication date," and to the utterance and/or written dispersal of a defamatory statement to a person or a group of people as "a publication."
[7] The facts in Murphy's declaration were not properly the subject of judicial notice. Perhaps, if such facts had been determined to be without dispute, for example, in an order granting a motion for summary judgment based on a finding that they were without dispute, the trial court could have taken judicial notice of such facts. But no such scenario existed here.
[8] The disingenuous nature of this request for "clarification" is evident from its wording: "This Request for Clarification is necessitated due to the contents of the court's Minute order wherein it stated that CLARKE'S demurrer was sustained, without leave to amend as to plaintiff's First Cause of Action for Slander. Because CLARKE is also included in plaintiff's fourth and sixth causes of action for Slander, it is CLARKE'S understanding that the Minute order of October 16, 1998 should have sustained the Demurrer as to the Causes of Action for Slander, without leave to amend. Without this clarification, there remains a procedural ambiguity, that as of the filing of this motion, plaintiff is unwilling to dismiss the other two (2) causes of action."

Arguably, by demurring to only the first cause of action, and failing to demurrer to plaintiff's fourth and sixth cause of action, Clarke might have waived the statute of limitations as to those two causes of action. "It is blackletter law that the defense of the statute of limitations is a personal privilege which must be affirmatively invoked in the lower court by appropriate pleading (if the defense appears on the face of the complaint, it must be raised by demurrer; otherwise it must be specially pleaded in the answer) or is waived [citations]." (O'Neil v. Spillane (1975) 45 Cal. App.3d 147, 156. 119 Cal.Rptr. 245; Hall v. Chamberlain (1948) 31 Cal.2d 673, 679, 192 P.2d 759; Neptune Society Corp. v. Longanecker (1987) 194 Cal.App.3d 1233, 1243-1244, 240 Cal.Rptr. 117.)
[9] Bozanich and County also point out that the trial court ruled against plaintiff on the separate ground that she failed to file a separate statement of undisputed and disputed facts as required by Code of Civil Procedure section 437c, subdivision (b). They have not, however, urged this ground as a basis for affirmance.

Although trial courts have the discretion to grant a motion for summary judgment simply for failure to provide a separate statement of undisputed and disputed facts (Code Civ. Proc., § 437c, subd. (b); Buehler v. Alpha Beta Co. (1990) 224 Cal.App.3d 729, 734, 274 Cal.Rptr. 14), granting a motion for summary judgment on such a procedural defect is a terminating sanction, and the exercise of such discretion must be reviewed according to the standards applicable to such sanctions, for example, with the rule in mind that terminating sanctions are disfavored and proper only when it is shown that a lesser sanction would have been ineffective. (Security Pacific Nat. Bank v. Bradley (1992) 4 Cal.App.4th 89, 98, 5 Cal.Rptr.2d 220.) Furthermore, when the matter involves a single, simple issue with minimal relevant evidentiary support, the opposing party's failure to provide a separate statement is less problematic for the court and moving party. (See, e.g., Gilbertson v. Osman (1986) 185 Cal.App.3d 308, 315, 229 Cal.Rptr. 627, disapproved on other grounds in Woods v. Young (1991) 53 Cal.3d 315, 328, fn. 4, 279 Cal.Rptr. 613, 807 P.2d 455.)
Here, as County and Bozanich point out, plaintiff conceded that she did not dispute the materials facts they had presented as undisputed. Instead, she simply opposed their motion on the single, legal issue: does the discovery' rule apply to toll the accrual of a cause of action for defamation, given these undisputed facts? Under these circumstances, we hold that it was an abuse of discretion to deny plaintiff's motion for summary judgment solely because of her failure to file a separate statement of undisputed and disputed facts.
[10] We use the terms "non-mass media defendant" and "mass media defendant" to differentiate between a non-mass media person or entity that publishes a defamatory statement in a non-mass-media forum (the "non-mass media defendant"), and a person or entity that republishes the defamatory statement in a mass media forum, for example, a newspaper, magazine, or book (the "mass media defendant").
[11] All further statutory references are to the Code of Civil Procedure, except as otherwise noted.
[12] Section 340 provides, in relevant part, that the actions which must be commenced within one year include "(3) Libel, slander, assault, battery, false imprisonment, seduction, injury or death from wrongful act or neglect, forged or raised checks, injury to animals by feeder or veterinarian. An action for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for the death of one caused by the wrongful act or neglect of another, or by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement, or against any person who boards or feeds an animal or fowl or who engages in the practice of veterinary medicine as defined in Section 4826 of the Business and Professions Code, for such person's neglect resulting in injury or death to an animal or fowl in the course of boarding or feeding such animal or fowl or in the course of the practice of veterinary medicine on such animal or fowl."
[13] In two tort cases alleging sexual abuse by a parent or authority figure, the courts decided not to apply the discovery rule as inapplicable on the facts of those particular cases, but the Legislature subsequently made it applicable by statute. (DeRose v. Carswell (1987) 196 Cal.App.3d 1011, 242 Cal.Rptr. 368, superseded by § 340.1; Snyder v. Boy Scouts of America, Inc. (1988) 205 Cal.App.3d 1318, 253 Cal.Rptr. 156, superseded by § 340.1 [seduction of a person under the legal age of consent, § 340(3)].) For example, in Snyder, the plaintiff knew of his cause of action long before reaching the age of majority. Therefore, the statute of limitations began to run on his 18th birthday, and the discovery rule simply did not apply on the facts, rather than because of any policy reason.

The Supreme Court also declined to reach this issue in John R. v. Oakland Unified School Dist. (1989) 48 Cal.3d 438, 256 Cal. Rptr. 766, 769 P.2d 948. Instead, it remanded the matter for a determination of whether a teacher's threats of retaliation had estopped the school district from asserting that the plaintiff had not filed a timely claim notice. (Id. at pp. 444-445, 256 Cal.Rptr. 766, 769 P.2d 948.) One dissenting opinion in John R. suggested that delayed discovery should not be extended to molestation cases. (Id. at pp. 460-462, 256 Cal.Rptr. 766, 769 P.2d 948 (cone, and dis. opn. of Eagleson, J.)
The discovery rule also has been applied in certain cases arising from contract. (See, e.g., April Enterprises, Inc. v. KTTV (1983) 147 Cal.App.3d 805, 832, 195 Cal.Rptr. 421 [breaches committed in secret and without immediately discoverable harm]; Allred v. Bekins Wide World Van Services (1975) 45 Cal. App.3d 984, 991, 120 Cal.Rptr. 312 [negligent breach of contract to ship personal goods]; Seelenfreund v. Terminix of Northern Cal., Inc. (1978) 84 Cal.App.3d 133, 136-139, 148 Cal. Rptr. 307 [negligent breach of contract to conduct termite inspection].)
[14] The doctrine of fraudulent concealment bears discussion here, because some of the opinions on which the parties to this appeal rely do not make a clear distinction between the discovery rule and the doctrine of fraudulent concealment as the bases for allowing a plaintiff to proceed with a defamation claim.
[15] Bernson, supra, 7 Cal.4th 926, 30 Cal. Rptr.2d 440, 873 P.2d 613 is a good example of the application of the doctrine of fraudulent concealment. In Bernson, Browning-Ferris Industries of California, Inc. (BFI) hired someone to write a political hit-piece on Bernson, a city council member. Bernson knew he had been defamed, but did not know the identity of the defamer. After being told by two reporters that the defamer was BFI, he inquired of BFI if this was true. BFI then went to great lengths to establish that BFI was not the author of the piece, and Bernson apparently was successfully deceived.

Later, after the statute of limitations had run on Bernson's cause of action for defamation, evidence came to light showing that BFI had hired someone to author the defamatory material. Bernson sued BFI and its minions, and each defendant either successfully demurred or moved for summary judgment on the ground that the statute of limitations had run.
Plaintiff appealed, and the California Supreme Court noted that there has been widespread acceptance of the principle that a statute of limitations which bars relief to a victim before the right tortfeasor/defendant was, or could be, discovered, violates an equitable guarantee of fairness. Accordingly, in the case before it, the court determined it was appropriate to apply the doctrine of fraudulent concealment to estop BFI and its minions from asserting the statute of limitations against Bernson's defamation claims.
[16] In this case, no mass media defendant is involved in the appeal. Therefore, we do not address the question of whether, in fact, there might be some public policy reason against applying the discovery rule to toll the statute of limitations on causes of action against a mass media defendant. We note, however, that nothing in the analysis in McGuiness persuades us that the discovery rule should not apply to mass media defendants.

Furthermore, the Uniform Single Publication Act (Civ.Code, §§ 3425.1 et. seq.), the only statute specifically applicable to a mass media publication, merely limits a plaintiff to a single cause of action for a mass media publication, no matter how many copies are published in a single edition, and does not purport to have any effect on the applicable statute of limitations or exceptions thereto, such as the discovery rule.
[17] A claimant may also apply for leave to file a late claim within one year of accrual. (Gov. Code, § 911.4.)