[No. S094467. Dec. 22, 2003.]

JILL SHIVELY, Plaintiff and Appellant, v.
PETER BOZANICH, as Deputy District Attorney, etc., et al., Defendants and Respondents.

JILL SHIVELY, Plaintiff and Appellant, v.
BRIAN PATRICK CLARKE, Defendant and Respondent.

**COUNSEL**

Hill & Hill, Monique Shana Hill and Gregory Charles Hill for Plaintiff and Appellant.

Law Office of Robert Cooper and Robert Cooper for Paul Ingerson as Amicus Curiae on behalf of Plaintiff and Appellant.

Franscell, Strickland, Roberts & Lawrence, David D. Lawrence, Cindy S. Lee and Jin S. Choi for Defendants and Respondents Peter Bozanich and County of Los Angeles.

Davis Wright Tremaine, Kelli L. Sager, Alonzo Wickers IV, Rochelle L. Wilcox and Thomas R. Burke for California Newspaper Publishers Association, Los Angeles Times Communications, LLC, The Copley Press, Inc., ABC, Inc., Magazine Publishers of America, Inc., News America, Inc., Cable News Network, National Broadcasting Company, Inc., and Time Inc., as Amici Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Thomas W. Newton for California Newspaper Publishers Association as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Karlene W. Goller for Los Angeles Times Communications, LLC, as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Harold L. Fuson, Jr., and Judith Fanshaw for The Copley Press, Inc., as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Jean Zoeller for ABC, Inc., as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Squadron Ellenoof Plesent & Sheinfeld and Slade R. Metcalf for Magazine Publishers of America, Inc., as Amici Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Jan F. Constantine for News America, Inc., as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

David Vigilante for Cable News Network as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Andrea Hartman for National Broadcasting, Inc., as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

Paul Gardephe for Time Inc., as Amicus Curiae on behalf of Defendants and Respondents Peter Bozanich and County of Los Angeles.

No appearance for Defendant and Respondent Brian Patrick Clarke.

## OPINION

**GEORGE, C. J.**—In this case we consider the application of the statute of limitations to a defamation case in which plaintiff first learned that she had been defamed after purchasing and reading a book that contained defamatory remarks about her, remarks that were attributed to persons other than the author of the book.

Ordinarily, a tort cause of action accrues and the limitations period commences when the injury occurs; for defamation this occurs, generally speaking, when the defendant communicates the defamatory statement to others. In some tort actions, the accrual of the cause of action is delayed until the plaintiff knew (or with reasonable diligence should have known) of the factual basis for the claim. This so-called discovery rule has been applied to defamation actions in limited circumstances when the defamatory statement is made in secret or is inherently undiscoverable. The question before us is whether the discovery rule may be employed to delay the accrual of a cause of action for defamation *beyond* the point at which the defamation no longer is secret but was made public in a book.

In the present case, plaintiff alleged that the same defamatory statement was communicated on three separate occasions. The first two occasions involved relatively private communications with only one or two listeners. On the third occasion, the statement was recounted in the book, together with a description of the circumstances under which the statement originally was made and subsequently was repeated.

With respect to the third occasion, there can be no question that the cause of action for defamation accrued and the statute of limitations ran from the date the book was first generally distributed to the public, regardless of the date on which plaintiff actually learned of the existence of the book and read its contents. Uniform authority establishes that the discovery rule does not apply to delay the accrual of a cause of action for a defamation contained in such a publication. Plaintiff's causes of action based upon the defamatory statements contained in the book are barred by the applicable statute of limitations.

With respect to the first two occasions on which these statements were communicated, even if the defamatory statements originally were made in confidence, any basis upon which to apply the discovery rule was dispelled by the publication of the book recounting these first two communications. Accordingly, we decline to sanction the application of the discovery rule in the circumstances presented by this case. We reverse the judgment of the Court of Appeal that in turn reversed the trial court's entry of judgment in favor of defendants.

## I

Plaintiff was a witness for the prosecution in a grand jury proceeding in which the prosecution sought the indictment of Orenthal James (O.J.) Simpson for the murders of Nicole Brown Simpson and Ronald Lyle Goldman. Ultimately, the grand jury proceeding was dismissed and the prosecution proceeded by way of information. Evidently, plaintiff did not testify at the ensuing trial.

Plaintiff alleged in a complaint filed on October 22, 1997, that she was defamed on three occasions. The first was in June 1994 when, her complaint alleged, defendant Brian Patrick Clarke (with whom plaintiff at one time had been romantically involved) described plaintiff to Peter Bozanich, a deputy district attorney employed by Los Angeles County (County) and to Bozanich's wife, fellow prosecutor Pam Ferrero, as "a felony probationer." The complaint alleged that plaintiff again was defamed when, in 1996, defendant Bozanich told defendant Joseph Bosco, an author, that plaintiff was on felony probation, adding that the district attorney's office had "checked it out." The complaint alleged that plaintiff was defamed for a third time when, in December 1996, defendant Bosco and defendant William Morrow and Company (William Morrow) published Bosco's book, entitled A Problem of Evidence, which recounted Clarke's and Bozanich's defamatory statements regarding plaintiff. The book, a page of which is attached to the complaint, also stated that Bozanich had recounted to Bosco the circumstances under which he had heard Clarke's statement. The book further explained that it was plaintiff's status as a felony probationer that accounted for the prosecution's failure to call her as a witness at trial, not (as previously had been announced) the circumstance that she had sold her story to *Hard Copy*. The specific defamatory words alleged in each of the causes of action in the complaint, however, were "[s]he's a felony probationer."

Plaintiff's complaint contained eight causes of action. It named as defendants Clarke, Bozanich, the County (as the employer of Bozanich), Bosco, and William Morrow. Three causes of action were alleged against Clarke, one for each of the three alleged defamations. (Counts one, four, and six.) Two causes of action were alleged against Bozanich, one for his statement to Bosco and one for the statement contained in the book. (Counts two and seven.) Two corresponding causes of action were alleged against the County as Bozanich's employer, based upon Bozanich's having uttered the defamatory remark in the course of his employment with the County. (Counts three and eight.)[1] Finally, one cause of action was alleged against Bosco and

---

[1] The causes of action against the County included the allegation that on May 3, 1997, plaintiff had presented to the County a claim for the damages she sought in the complaint, as required by Government Code section 910.

William Morrow for the statement contained in Bosco's book. (Count five.) Each of the causes of action included allegations with respect to the asserted falsity of the alleged defamatory statement and defendants' malice. The specific allegation that is of importance to the issue in the present case is that plaintiff did not become aware that the defamatory statements had been made, and could not have become aware that they had been made, until the publication of the book A Problem of Evidence. Plaintiff's additional pleadings, as noted below, added the claim that she did not become aware of the defamatory statements until she bought and read the book in December 1996.

Clarke demurred to the first cause of action on the ground that it was barred by the one-year statute of limitations applicable to defamation claims. (See Code Civ. Proc., § 340, subd. (c).)[2] The trial court sustained Clarke's demurrer to the first cause of action without leave to amend, on the basis that the defamatory statement had been made more than one year prior to the filing of the complaint. The court subsequently clarified its order to reflect that, on the same basis, it had sustained the demurrer as to each of the three causes of action that had been alleged against Clarke. A judgment was entered in favor of defendant Clarke on May 24, 1999. Plaintiff filed a notice of appeal, case No. B133983.

For their part, defendants Bozanich and the County answered the complaint and raised various affirmative defenses, including that the causes of action alleged against them were barred by plaintiff's failure to file her claims against them within six months of the time her causes of action accrued, as required by the California Tort Claims Act. (Gov. Code, § 911.2.) Subsequently, these defendants filed a motion for summary judgment on that ground as to plaintiff's four causes of action against them. In their motion, they asserted that the causes of action accrued on September 18, 1996, the date by which they alleged the book, A Problem of Evidence, had been distributed in California. They asserted that plaintiff filed her claim with the County on May 12, 1997, more than six months later, as demonstrated by County records. In support of the motion, defendants submitted a declaration by William Murphy, vice-president of William Morrow, who declared that the book received general distribution in California in September 1996. Attached to that declaration were detailed shipping records establishing the number of copies that were shipped to California bookstores between September 5 and October 21, 1996.

Plaintiff opposed the motion for summary judgment upon the ground, among others, that her causes of action against these defendants did not

---

[2] Prior to 2002, the relevant language was designated as subdivision (3) of Code of Civil Procedure section 340, but for convenience, the current designation (Code Civ. Proc., § 340, subd. (c)), is used throughout this opinion.

accrue until December 1996, when she bought and read the book and learned of the defamatory statements. She also asserted that triable issues of fact remained concerning the date of the book's publication and distribution, while maintaining that she had not had adequate time to engage in discovery. In her mandatory statement of material facts in dispute (Code Civ. Proc., § 437c, subd. (b)), however, plaintiff conceded it was undisputed that the book was shipped to California beginning on September 5, 1996; that almost 7,000 copies were shipped to California between that date and October 21, 1996; that the book was on sale in California no later than September 18, 1996; that thousands of copies were on sale in California no later than October 21, 1996; and that the official publication date for the book was October 3, 1996. (The record also reflects that almost 33,000 copies of the book had been shipped for distribution throughout the nation by October 21, 1996.) Plaintiff also conceded as undisputed that she filed her tort claim on May 12, 1997, and that on May 21, 1998, the County provided notice of both her failure to comply with the requirement of the California Tort Claims Act that the claim be filed within six months (Gov. Code, § 911.2) and the requirements for a late-claim petition.

The trial court granted summary judgment in favor of Bozanich and the County on the grounds that (1) plaintiff failed to file her statement of material facts in dispute in a timely manner (Code Civ. Proc., § 437c, subd. (b)), and (2) plaintiff failed to file a timely claim with the County pursuant to the Tort Claims Act (Gov. Code, § 911.2) or to seek relief when the County denied her claim as untimely. The trial court entered judgment in favor of defendants Bozanich and the County. Plaintiff filed a second notice of appeal, case No. B130905.[3]

The Court of Appeal consolidated the two appeals. It reversed the two judgments, holding (both with respect to defendant Clarke and defendants Bozanich and the County) that the trial court erred in failing to consider the accrual date of plaintiff's causes of action and the commencement of the period of limitations under the discovery rule. Under that rule, according to the Court of Appeal, all of plaintiff's causes of action accrued when plaintiff knew (or with reasonable diligence should have known) of the defamatory statements—a question for the jury to determine in this case.

The Court of Appeal acknowledged that Code of Civil Procedure section 340, subdivision (c) establishes a one-year statute of limitations for defamation actions, among others, but the court observed that most of the tort claims

---

[3] Neither of these judgments encompassed plaintiff's claims against Bosco and William Morrow. Although plaintiff named them as respondents in the appeals designated case Nos. B133983 and B130905, these defendants subsequently were dismissed as parties to the appeals. Thus, the application of the statute of limitations to the causes of action alleged against Bosco and William Morrow is not before us in the present case.

enumerated in that statute have been considered to be subject to tolling until the plaintiff learns of (or with reasonable diligence should have discovered) his or her injury. The appellate court explained that the discovery rule has been characterized as applying to delay the accrual of a cause of action in cases in which the plaintiff cannot easily discover the injury or the plaintiff and the defendant are in a fiduciary relationship. The court also noted that a defendant who conceals his or her identity or responsibility may be equitably estopped from relying upon the defense that the statutory limitations period has expired.

The Court of Appeal pointed out that both the discovery rule and the doctrine of equitable estoppel have been applied to defamation claims, whether they involve libel or slander. The court commented that no California case has held the discovery rule and the doctrine of equitable estoppel inapplicable to a claim alleging libel or slander when the tort has been committed by a "non-mass-media defendant." The court determined that the result should not be different as to a "non-mass-media" defendant merely because the defamatory statement of such a defendant has been republished in a "mass media forum." It expressed concern that the term "mass media" unwisely could be deemed to include any type of publication, no matter how obscure, and that rigid application of the one-year statute of limitations could leave helpless those plaintiffs who have been defamed in obscure books or other media outlets. The court held that "the discovery rule can be applied to toll the running of the statutory period for defamation against non-mass-media defendants, even though the fact of the initial defamation is brought to light in a mass media publication." The court also applied the discovery rule to toll the period of limitations imposed by the California Tort Claims Act (Gov. Code, § 911.2) with respect to claims against defendants Bozanich and the County.[4]

Finally, the Court of Appeal concluded that a triable issue of material fact existed with respect to the question whether "the republication of defendants' allegedly defamatory statements in [the] author's book was, *under all of the circumstances*, sufficient to put plaintiff on reasonable notice that defendants had defamed her. Until plaintiff had such notice, the running of the statute was tolled."[5]

---

[4] The Court of Appeal also concluded that the trial court erred in granting the motion for summary judgment in favor of defendants Bozanich and County in part on the basis that plaintiff had failed to file a timely separate statement of disputed and undisputed facts. (See Code Civ. Proc., § 437c, subd. (b).) The Court of Appeal noted that, in their appellate briefing, defendants had not relied upon this basis for the judgment in their favor. This issue is not before us.

[5] In a footnote stating that it was not called upon to decide whether there "might be some public policy reason against applying the discovery rule to toll the statute of limitations on

Bozanich and the County petitioned for review. Clarke did not. Nonetheless, because the two appeals were consolidated, both matters came before us when we granted review.

II

A

Initially, we briefly describe relevant aspects of the law of defamation, including the so-called single-publication rule, to assist in understanding the allegations of plaintiff's complaint and the application of the statute of limitations to these allegations.

■ Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. (Civ. Code, § 44.) In general, leaving aside certain qualifications that are not relevant in this case, a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel. (Civ. Code, § 45; Rest.2d Torts, § 568, subd. (1).) A false and unprivileged *oral* communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander. (Civ. Code, § 46; Rest.2d Torts, § 568, subd. (2).) The present case involves claims based upon both libel and slander.

■ One of the elements of the tort of defamation is "publication." In general, each time the defamatory statement is communicated to a third person who understands its defamatory meaning as applied to the plaintiff, the statement is said to have been "published," although a written dissemination, as suggested by the common meaning of that term, is not required. Each publication ordinarily gives rise to a new cause of action for defamation. (See *Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 268 [79 Cal.Rptr.2d 178, 965 P.2d 696]; *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1203 [31 Cal.Rptr.2d 776, 875 P.2d 1279]; *Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645 [85 Cal.Rptr.2d 397]; *Kanarek v. Bugliosi* (1980) 108 Cal.App.3d 327, 332–333 [166 Cal.Rptr. 526]; Rest.2d Torts, § 577 & coms. b & c, pp. 201–202; *id.*, § 578; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 476–478, pp. 560–562; 1 Smolla, Law of Defamation (2d ed. 1997) § 4:77–4:78, pp. 4-124 to 4-126; § 4:87, p. 4-136.3.) In the present case,

causes of action against a mass media defendant," the Court of Appeal nonetheless suggested that the discovery rule *should* apply to "mass media defendants." The court claimed that the Uniform *Single Publication Act,* adopted in California in Civil Code section 3425.1 et seq., applied merely to limit a plaintiff to one cause of action for a defamation contained in a "mass media publication," but did not have any effect on the applicable statute of limitations.

three separate "publications" are alleged—one by Clarke to Bozanich, one by Bozanich to Bosco, and one by Bosco and William Morrow in the book, A Problem of Evidence. It is alleged that various defendants are jointly liable for some of the publications.

■ The rule that each publication of a defamatory statement gives rise to a new cause of action for defamation applies when the original defamer repeats or recirculates his or her original remarks to a new audience. (See *Kanarek v. Bugliosi, supra,* 108 Cal.App.3d at p. 332; Rest.2d Torts, § 577A, subd. (1), com. a, p. 208; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 478, p. 562.) That rule also applies when a person who heard, read, or saw the original defamatory remark repeats the remark to others (subject to qualifications not relevant here). (See *Khawar v. Globe Internat., Inc., supra,* 19 Cal.4th at p. 268; *Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 217 [228 Cal.Rptr. 160, 721 P.2d 41]; *Di Giorgio Corp. v. Valley Labor Citizen* (1968) 260 Cal.App.2d 268, 273 [67 Cal.Rptr. 82].)

It is under the latter application of the rule, presumably, that plaintiff alleged that Bozanich's statement to Bosco, repeating Clarke's original statement, gave rise to a cause of action for defamation against Bozanich.

■ In general, the repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the *original defamer,* when the repetition was reasonably foreseeable. (*Mitchell v. Superior Court* (1984) 37 Cal.3d 268, 281 [208 Cal.Rptr. 152, 690 P.2d 625]; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 478, p. 562; 1 Smolla, Law of Defamation, *supra,* § 4:91, pp. 4-138 to 4-139.) It is the foreseeable subsequent *repetition* of the remark that constitutes publication and an actionable wrong in this situation, even though it is the original author of the remark who is being held accountable. (See, e.g., *Schneider v. United Airlines, Inc.* (1989) 208 Cal.App.3d 71, 75–76 [256 Cal.Rptr. 71].)

It is under this rule, presumably, that plaintiff alleged causes of action against Clarke based upon Bozanich's oral repetition of Clarke's original remark, and against Clarke based upon Bosco's and William Morrow's repetition, in the book, of Clarke's original remark. Similarly, it is under this theory, presumably, that plaintiff alleged causes of action against Bozanich and the County based upon Bosco's and William Morrow's repetition, in the book, of the statement related by Bozanich to Bosco.

Under the common law as it existed in the 19th century and early part of the 20th century, the principle that each communication of a defamatory remark to a new audience constitutes a separate "publication," giving rise to a separate cause of action, led to the conclusion that each sale or delivery of a

copy of a newspaper or book containing a defamation also constitutes a separate publication of the defamation to a new audience, giving rise to a separate cause of action for defamation. (See 2 Harper et al., Law of Torts (1986) § 5.16, p. 126; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 479, p. 563.) This conclusion had the potential to subject the publishers of books and newspapers to lawsuits stating hundreds, thousands, or even millions of causes of action for a single issue of a periodical or edition of a book. This conclusion also had the potential to disturb the repose that the statute of limitations ordinarily would afford, because a new publication of the defamation could occur if a copy of the newspaper or book were preserved for many years and then came into the hands of a new reader who had not discovered it previously. The statute of limitations could be tolled indefinitely, perhaps forever, under this approach.

The difficulties created by the early common law rule are illustrated in a 19th-century English case that concluded a plaintiff could bring an action seeking redress for libel against a publisher based upon an allegedly defamatory remark contained in a newspaper issued 17 years prior to the plaintiff's discovery of the defamation, on the theory that the sale to the plaintiff of the long-forgotten copy of the newspaper constituted a new publication, starting anew the running of the period of limitations. (*The Duke of Brunswick v. Harmer* (Q.B. 1849) 117 Eng.Rep. 75.) Despite the burdens created by the staleness and potential volume of the claims thus permitted, many American courts, and the reporters of the first Restatement of Torts, nonetheless adhered to the rule applied by the English court in the *Duke of Brunswick* case. (Rest.2d, Torts, § 578, com. b, p. 200; 1 Smolla, Law of Defamation, *supra*, § 4:93, p. 4-140.1.)

Ultimately, many American courts began to reconsider the common law rule exemplified in the *Duke of Brunswick* case. These courts recognized that the advent of books and newspapers that were circulated among a mass readership threatened unending and potentially ruinous liability as well as overwhelming (and endless) litigation, as long as courts adhered to the rule that each sale of a copy of a newspaper or a book, regardless how long after original publication, constituted a new and separate publication. The early common law rule threatened a volume of litigation and a potential for indefinite tolling of the period of limitations that, these courts realized, would challenge the ability and willingness of publishers to report freely on the news and on matters of public interest. (See *Gregoire v. G.P. Putnam's Sons* (1948) 298 N.Y. 119 [81 N.E.2d 45, 46–48] [collecting cases]; see also *Hartmann v. Time, Inc.* (3d.Cir. 1948) 166 F.2d 127, 134 [observing that the 19th century rule posed a threat to freedom of the press]; *Applewhite v. Memphis State University* (Tenn. 1973) 495 S.W.2d 190, 194 [noting that the

rule posed threats of harassment, multiple recovery, and injury to the administration of justice]; *Winrod v. Time, Inc.* (1948) 334 Ill.App. 59 [78 N.E.2d 708, 709–710].)

 Seeking to avoid *both* the multiplicity *and* the staleness of claims permitted by the rule applied in the *Duke of Brunswick* case, courts fashioned what became known as the single-publication rule, holding that, for any single edition of a newspaper or book, there was but a single potential action for a defamatory statement contained in the newspaper or book, no matter how many copies of the newspaper or the book were distributed. (See, e.g., *Gregoire v. G.P. Putnam's Sons, supra,* 81 N.E.2d 45, 46–48; see also *Bradford v. American Media Operations, Inc.* (E.D.Pa. 1995) 882 F.Supp. 1508, 1513–1514; *Rinaldi v. Viking Penguin, Inc.* (1981) 52 N.Y.2d 422 [420 N.E.2d 377, 380–382, 438 N.Y.S.2d 496]; *Winrod v. Time, Inc., supra,* 78 N.E.2d at pp. 708–709; Rest.2d Torts, § 577A, subd. (3); 2 Harper et al., Law of Torts, *supra,* § 5.16, pp. 126–128.)[6] Of course, because each person who takes a responsible part in a publication of defamatory matter may be held liable for the publication (see *Dunn v. Hearst* (1903) 139 Cal. 239, 241 [73 P. 138]; *Osmond v. EWAP, Inc.* (1984) 153 Cal.App.3d 842, 852 [200 Cal.Rptr. 674]), multiple causes of action, even under the single-publication rule, could be brought in *one proceeding* against *several defendants* for a single defamatory statement. (*Wathan v. Equitable Life Assur. Soc.* (C.D.Ill. 1986) 636 F.Supp. 1530, 1533–1536; *Dubinsky v. United Airlines Master Executive Council* (1999) 303 Ill.App.3d 317 [708 N.E.2d 441, 454, 236 Ill.Dec. 855]; 14 West's U. Laws Ann. (1990) U. Single Publ. Act, comrs. note, p. 375.)

 Under the single-publication rule, with respect to the statute of limitations, publication generally is said to occur on the "first general distribution of the publication to the public." (*Belli v. Roberts Furs* (1966) 240 Cal.App.2d 284, 289 [49 Cal.Rptr. 625]; see also *Bradford v. American Media Operations, supra,* 882 F.Supp. at p. 1514 [collecting cases].) Accrual at that point is believed to provide adequate protection to potential plaintiffs, especially in view of the qualification that repetition of the defamatory statement in a *new edition* of a book or newspaper constitutes a new publication of the defamation that may give rise to a new cause of action, with a new accrual date. (See *Rinaldi v. Viking Penguin, Inc., supra,* 420 N.E.2d at p. 433.)[7] Under this rule, the cause of action accrues and the period of limitations commences, *regardless* of when the plaintiff secured a copy or

---

[6] The applicability of the single-publication rule to written publications that receive an extremely limited distribution is not an issue in the present case.

[7] Notwithstanding the single-publication rule, a *new edition* or new *issue* of a newspaper or book still constitutes a new publication, giving rise to a new and separate cause of action and a new accrual date for the purpose of the statute of limitations. (*Schneider v. United Airlines, supra,* 208 Cal.App.3d at p. 76; *Kanarek v. Bugliosi, supra,* 108 Cal.App.3d at p. 332 [separate causes of action for hardback and paperback editions of a book]; Rest.2d Torts, § 577A, subd. (3); 1 Smolla, Law of Defamation, *supra,* § 4:93, p. 4-140.2.)

became aware of the publication. (See *Strick v. Superior Court* (1983) 143 Cal.App.3d 916, 923 [192 Cal.Rptr. 314]; *McGuiness v. Motor Trend Magazine* (1982) 129 Cal.App.3d 59, 62–63 [180 Cal.Rptr. 784]; *Belli v. Roberts Brothers Furs, supra,* 240 Cal.App.2d at p. 289; see also *Morgan v. Hustler Magazine* (N.D. Ohio 1987) 653 F.Supp. 711, 717; *Flynn v. Associated Press* (1988) 401 Mass. 776 [519 N.E.2d 1304, 1307–1308].)

■ The single-publication rule largely has been codified in the Uniform Single Publication Act, which has been adopted in many states, including California. (Civ. Code, § 3425.3, added by Stats. 1955, ch. 867, § 1, p. 1481;[8] *McGuiness v. Motor Trend Magazine, supra,* 129 Cal.App.3d at p. 61; *Belli v. Roberts Brothers Furs, supra,* 240 Cal.App.2d at p. 288; see also 1 Smolla, Law of Defamation, *supra,* § 4:93, p. 4-140.2; 2 Harper et al., Law of Torts, *supra,* § 5.16, pp. 127–128 & fn. 8.) The Uniform Single Publication Act was intended to reflect the common law single-publication rule. (*Wathan v. Equitable Life Assur. Co., supra,* 636 F.Supp. at pp. 1533–1536; *Dubinsky v. United Airlines Master Executive Council, supra,* 708 N.E.2d at p. 454; 14 West's U. Laws Ann., *supra,* U. Single Publ. Act, comrs. note, p. 375.)

## B

■ We next consider the application of the statute of limitations for defamation, which requires that an action be filed within one year of accrual of the cause of action, to the present case. (Code Civ. Proc., § 340, subd. (c).)[9] In common with other statutory limitations of the period within which an action may be brought, this statute serves to protect potential defendants from stale claims and to encourage plaintiffs to be diligent. Such provisions, by creating limits on the period during which a person's conduct may engender litigation and liability, promote predictability and stability. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395–396 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

■ In a claim for defamation, as with other tort claims, the period of limitations commences when the cause of action accrues. (Code Civ. Proc.,

---

[8] That section provides: "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." (Civ. Code, § 3425.3.)

[9] In addition, with respect to the claims against Bozanich for statements made in the course of his employment, and against the County as his employer, plaintiff was obliged to file a claim with the County within six months of the accrual of her cause of action. (Gov. Code, § 911.2.)

§ 312; *Norgart v. Upjohn Co., supra,* 21 Cal.4th at p. 397.) As we have discussed, in general a cause of action in tort accrues at the time of injury, and a cause of action for defamation accrues at the time the defamatory statement is "published" (using the term "published" in its technical sense). (*Bernson v. Browning-Ferris Industries, Inc.* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613]; *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923]; *Schneider v. United Airlines, Inc., supra,* 208 Cal.App.3d at p. 76; *Strick v. Superior Court, supra,* 143 Cal.App.3d at p. 922; see also *Norgart v. Upjohn Company, supra,* 21 Cal.4th at p. 397.)

As noted, in defamation actions the general rule is that publication occurs when the defendant communicates the defamatory statement to a person other than the person being defamed. (*Cunningham v. Simpson* (1969) 1 Cal.3d 301, 307 [81 Cal.Rptr. 855, 461 P.2d 39]; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 476, pp. 560–561; Rest.2d Torts, § 577.) As also has been noted, with respect to books and newspapers, publication occurs (and the cause of action accrues) when the book or newspaper is first generally distributed to the public. (*Strick v. Superior Court, supra,* 143 Cal.App.3d at p. 922; *McGuiness v. Motor Trend Magazine, supra,* 129 Cal.App.3d at p. 61; *Belli v. Roberts Brothers Furs, supra,* 240 Cal.App.2d at p. 289.)

When we apply these definitions to plaintiff's causes of action in the present case, it is evident that each is barred by the statute of limitations. Plaintiff filed her claim with the County on May 12, 1997, and her complaint on October 22, 1997. By contrast, the first alleged defamation was published in 1994, more than one year prior to the filing of the complaint and more than six months prior to the filing of the claim with the County. The second alleged defamation was published in 1996 sometime prior to September. The third alleged defamation was communicated by means of the book, thousands of copies of which were distributed for sale in. California, on a date (as plaintiff concedes) prior to October 21, 1996. Even if we consider October 21, 1996, to be the date of publication, the complaint was filed a year and a day after that date and the claim with the County was filed more than six months after that date.

Plaintiff contends, however, that pursuant to the so-called discovery rule, all of her causes of action accrued when she first learned of the defamatory statement. She urges that, as a general rule of tort law, the accrual of a cause of action is tolled until the time the plaintiff knows (or with reasonable diligence should have known) that the injury occurred. In her case, she claims, accrual occurred in December 1996, when she bought and read a copy of the book, A Problem of Evidence. She asserts that the applicable statute of limitations should run from that time for all of her causes of action.

 We have recognized that in some instances, the accrual of a cause of action in tort is delayed until the plaintiff discovered (or reasonably should have discovered or suspected) the factual basis for his or her claim. (See *Norgart v. Upjohn Co., supra,* 21 Cal.4th at p. 397.) In professional malpractice cases, for example, delayed accrual is justified on the basis that the expertise expected of professionals is beyond the ability of laypersons to evaluate, and on the further basis that it may be impossible for a layperson even to observe the professional's application of this expertise. (See *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188 [98 Cal.Rptr. 837, 491 P.2d 421].) As observed by the Courts of Appeal here and in several other decisions, the discovery rule most frequently applies when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand. (*Evans v. Eckelman* (1990) 216 Cal.App.3d 1609, 1614–1615 [265 Cal.Rptr. 605]; see also *Mark K. v. Roman Catholic Archbishop* (1998) 67 Cal.App.4th 603, 610–611 [79 Cal.Rptr.2d 73]; *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1246–1247 [78 Cal.Rptr.2d 566].)

When the basis for a claim has been published in the public record or has been the subject of publicity, several cases have declined to apply the discovery rule, commenting that the plaintiff may be expected to be sufficiently diligent to discover the basis for his or her claim within the statutory period. (See *Utility Cost Management v. Indian Wells Valley Water Dist* (2001) 26 Cal.4th 1185, 1197 [114 Cal.Rptr.2d 459, 36 P.3d 2] [rejecting application of the discovery rule to a claim for refund of an assertedly excessive charge, when the basis for the plaintiff's claim could have been discovered by means of the public reporting requirements that were imposed by statute on the defendant]; *Norgart v. Upjohn Co., supra,* 21 Cal.4th at pp. 408–409, fn. 7 [relying upon press coverage in rejecting the plaintiffs' claim that, because they had no actual or constructive suspicion concerning a defendant's culpability, they could not have amended their complaint to name the defendant within the period of limitations]; *McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160–161 & fn. 11 [86 Cal.Rptr.2d 645] [referring to publicity as a basis for rejecting tolling under a statutory discovery rule]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 602, p. 773; but see *Prudential Home Mortgage Co. v. Superior Court, supra,* 66 Cal.App.4th at pp. 1247–1248 [observing that public records may impart "presumptive notice" of the basis for a claim, but declining to hold that they always do so as a matter of law].)

 This court and other courts in California and elsewhere have recognized that in certain circumstances it may be appropriate to apply the discovery rule to delay the accrual of a cause of action for defamation or to

impose an equitable estoppel against defendants who assert the defense after the limitations period has expired.

An example of equitable estoppel is presented in *Bernson v. Browning-Ferris Industries of California, Inc., supra,* 7 Cal.4th 926, in which a company allegedly circulated among various press outlets a defamatory dossier concerning the plaintiff, a city council member. When the plaintiff learned of the dossier and accused the defendant of being its author, the defendant denied authorship, both to the plaintiff personally and in a letter printed in the Los Angeles Times. The defendant also demanded that the newspaper retract its assertion that the defendant had been the author. Although the normal rule is that ignorance of the identity of the defendant is not a basis for tolling the statute of limitations, under the particular circumstances this court determined that as a matter of equity, the defendant should be estopped from profiting from its own misconduct in precluding the plaintiff from ever ascertaining the identity of the defendant. (7 Cal.4th at pp. 932–933, 936.) We acknowledged, in passing, that the discovery rule has been applied to defamation cases. (7 Cal.4th at pp. 931–932.)

That rule has been applied when the defamatory statement is hidden from view as, for example, in a personnel file that generally cannot be inspected by the plaintiff. The rationales offered in support of the application of the discovery rule to defamation cases are equitable in nature. The cases turn upon the circumstances in which the defamatory statement is made and frequently involve a defamatory writing that has been kept in a place to which the plaintiff has no access or cause to seek access. The plaintiff's inability to discover the libel when it first was "published" and placed in a confidential file would render unjust any holding that the cause of action accrued and the period of limitations commenced when the writing was placed in the file.

For example, in a case upon which plaintiff places great emphasis, the court in *Manguso v. Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725 [152 Cal.Rptr. 27] determined that a teacher's cause of action for libel against a school principal did not accrue until the teacher knew or had reasonable cause to learn of the libelous material the principal had placed in her personnel file. The court explained that statutes of limitations are intended to protect defendants from unexpected, stale claims when the plaintiff has slept on his or her rights, but that the discovery rule provides an exception when the plaintiff has used reasonable diligence to protect these rights. The court asserted that the discovery rule is intended to avoid unjustly depriving plaintiffs of their causes of action when they have been diligent, and to relieve plaintiffs of the obligation to file a claim prior to the time they reasonably could be expected to discover it. (*Id.* at pp. 730–731; see also

*Staheli v. Smith* (Miss. 1989) 548 So.2d 1299, 1303 [collecting cases limiting the discovery rule to private or confidential publications and holding that an "inherently undiscoverable" libel contained in a tenure recommendation may be subject to the discovery rule]; *Tom Olesker's Excit. W., etc. v. Dun & Bradstreet, Inc.* (1975) 61 Ill.2d 129 [334 N.E.2d 160, 164] [applying the discovery rule to the transmittal of a defamatory credit report]; *Flynn v. Associated Press, supra,* 519 N.E.2d at p. 1307 [suggesting that in defamation actions, the discovery rule applies only to "inherently unknowable" publications].) As for oral defamatory remarks (that is, slander), plaintiff has cited one case in which the court assumed the same analysis would apply. (See *McNair v. Worldwide Church of God* (1987) 197 Cal.App.3d 363, 379–380 [242 Cal.Rptr. 823].)

The discovery rule has not, however, been applied to postpone the accrual of a cause of action based upon the publication of a defamatory statement contained in a book or newspaper. The rule constitutes an exception to general rules concerning the accrual of a cause of action—an exception based upon equity. Plaintiff does not explain satisfactorily how the equitable considerations that may apply to a defamation that is hidden from view might apply to a defamation that is made public in a book.

█ Indeed, courts uniformly have *rejected* the application of the discovery rule to libels published in books, magazines, and newspapers, pointing out that application of the discovery rule would undermine the protection provided by the single-publication rule. (*McGuiness v. Motor Trend Magazine, supra,* 129 Cal.App.3d at pp. 62–63; *Schweihs v. Burdick* (7th Cir. 1996) 96 F.3d 917, 920–921; *Barrett v. Catacombs Press* (E.D.Pa. 1999) 64 F.Supp.2d 440, 444–446; *Bradford v. American Media Operations, Inc., supra,* 882 F.Supp. at pp. 1514, 1518–1519; *Morgan v. Hustler Magazine, Inc., supra,* 653 F.Supp. at p. 717; *Rinsley v. Brandt* (D.Kan. 1977) 446 F.Supp. 850, 852–853; *Flynn v. Associated Press, supra,* 519 N.E.2d at pp. 1307–1308 [collecting cases]; *Holloway v. Butler* (Tex.App. 1983) 662 S.W.2d 688, 693; see also *Tom Olesker's Excit. W., etc. v. Dun & Bradstreet, Inc., supra,* 334 N.E.2d at p. 164 [distinguishing "hidden" defamatory statements by a credit reporting agency from statements published in books and newspapers].)

Plaintiff asks us to deviate from this authority in order to produce an assertedly equitable result, based upon her contention that she has been a reasonably diligent litigant—even as to the allegedly defamatory statement published in the book, A Problem of Evidence. But, as one court explained, although application of the discovery rule may be justified when the defamation was communicated in confidence, that is, "in an inherently secretive manner," the justification does not apply when the defamation occurred by

means of a book, magazine, or newspaper that was distributed to the public. (*McGuiness v. Motor Trend Magazine, supra,* 129 Cal.App.3d at p. 63.) Even a decision that applied the discovery rule to a defamatory statement contained in a confidential credit report distinguished the case before it from defamations of the kind alleged in the present case, on the ground that "the publication has been for public attention and knowledge[,] and the person commented on, if only in his role as a member of the public, has had access to such published information." (*Tom Olesker's Excit. W., etc. v. Dun & Bradstreet, Inc., supra,* 334 N.E.2d at p. 164.)

As is evident, application of the discovery rule to statements contained in books and newspapers would undermine the single-publication rule and reinstate the indefinite tolling of the statute of limitations intended to be cured by the adoption of the single-publication rule. If we were to recognize delayed accrual of a cause of action based upon the allegedly defamatory statement contained in the book, A Problem of Evidence, on the basis that plaintiff did not happen to come across the statement until some time after the book was first generally distributed to the public, we would be adopting a rule subjecting publishers and authors to potential liability during the entire period in which a single copy of the book or newspaper might exist and fall into the hands of the subject of a defamatory remark. Inquiry into whether delay in discovering the publication was reasonable has not been permitted for publications governed by the single-publication rule. Nor is adoption of the rule proposed by plaintiff appropriate simply because the originator of a privately communicated defamatory statement may, together with the author and the publisher of a book, be liable for the defamation contained in the book. Under the rationale for the single-publication rule, the originator, who is jointly responsible along with the author and the publisher, should not be liable for millions of causes of action for a single edition of· the book. Similarly, consistent with that rationale, the originator, like the author or the publisher, should not be subject to suit many years after the edition is published.

We conclude, therefore, that the causes of action that are based upon publication of the defamatory material in the book, A Problem of Evidence, namely the causes of action that would hold Clarke and Bozanich, respectively, (and the County as Bozanich's employer) liable for the allegedly foreseeable repetition of their defamatory statements published in the book must be barred.

The Court of Appeal reached a contrary conclusion, based upon the assertedly confidential nature of the first two defamatory publications made by Clarke and Bozanich. We believe, however, that the court failed to recognize the presence of separate causes of action alleged against Clarke and

Bozanich *for the statements contained in the book.* The circumstance that plaintiff understandably might not be aware of Clarke and Bozanich's earlier confidential communications would have no bearing on the application of the statute of limitations to a later, separate defamation that *was* contained in the book, and for which plaintiff seeks to hold Clarke and Bozanich responsible. Clarke's and Bozanich's liability in this respect was essentially the same as the potential liability of the book's author and publisher, and, with regard to the latter category of defendants, the single-publication rule applies without any possibility of doubt.

The Court of Appeal's opinion, in a footnote, questioned the basis for and legitimacy of the single-publication rule even as applied to defamations contained in books and newspapers. It asserted that the rule has nothing to do with the statute of limitations, but this assertion is untenable. The history of the rule, the basis for its adoption, and the cases cited above demonstrate the fallacy of this position. Without purporting to answer all potential attacks on the rule, we believe that our discussion has established that the single-publication rule is supported by settled authority and by legitimate policy concerns, and that it should apply in the present case as we have determined.

Next, we examine whether accrual of plaintiff's *remaining* causes of action should be tolled pursuant to the discovery rule. These causes of action are alleged against Clarke, for his original defamatory statement, and against Clarke for Bozanich's repetition of that defamatory statement; against Bozanich, for his repetition, in the course of his employment with the County, of the defamatory statement to Bosco, and against the County as Bozanich's employer.

We acknowledge that the discovery rule has been applied to such inherently covert defamations as entries in personnel records, and also to communications by credit reporting agencies to their subscribers. (See, e.g., *Manguso v. Oceanside Unified School Dist., supra,* 88 Cal.App.3d at pp. 730–731; *Schweihs v. Burdick, supra,* 96 F.3d at p. 921 [declining to apply the discovery rule to a book, but observing that "[t]he courts seem to apply the discovery rule in situations where the defamatory material is published in a manner likely to be concealed from the plaintiff, such as credit reports or confidential memoranda. In these situations, the injustice that results from the expiration of the limitations period before discovery of the plaintiff's injury is more likely to occur"]; *Tom Olesker's Excit. W., etc. v. Dun & Bradstreet, Inc., supra,* 334 N.E.2d at p. 164.) Applying the discovery rule to delay accrual of a cause of action based upon an asserted defamation contained in a faculty tenure report, one court observed: "Those states having directly addressed the discovery rule in defamation cases have generally applied it in those very limited situations where the allegedly libelous statement occurred

in private or confidential publications [that are] not readily available to the plaintiff or the public." (*Staheli v. Smith, supra,* 548 So.2d at p. 1303.)

These authorities might support plaintiff's position if the original defamatory statements made by Clarke and Bozanich had not been disseminated in the book, and if plaintiff had learned of them for the first time through, for example, an entry in a police report, an employment record, or an unexpected disclosure by someone to whom the essentially private defamations had been repeated. ▪▪▪ We believe, however, that the equitable basis for applying the discovery rule—that a plaintiff should not forfeit a cause of action based on a confidential communication that he or she had no reasonable basis for discovering—no longer exists once the original defamatory statement is published in a book that was distributed to the general public. In such circumstances, not only is the basis for the claim not hidden, but it has been trumpeted.

The Court of Appeal did not appear to recognize that, even with respect to the two presumably confidential communications, the equitable basis or rationale for applying the discovery rule in the case of inherently secret or confidential communications ceases once a book recounting these communications is published and is distributed to the general public. ▪▪▪ The book in the present case repeated the earlier defamatory statements and attributed them to Bozanich and Clarke. We can see no justification for applying the discovery rule to delay the accrual of plaintiff's causes of action beyond the point at which their factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public. The situation facing plaintiff was analogous to that presented in other cases where the factual basis for the claim is a matter of public record and thus does not invoke the rationale for applying the discovery rule. (See *Utility Cost Management v. Indian Wells Valley Water Dist., supra,* 26 Cal.4th at p. 1197 [114 Cal. Rptr.2d 459,36 P.3d 2]; *McKelvey v. Boeing North American, Inc., supra,* 74 Cal.App.4th at pp. 160–161 & fn. 11.) We conclude that any equitable ground supporting the application of the discovery rule to the earlier defamations ceased to exist once the book was published and was distributed to the general public.

## III

For the reasons stated above, the judgment of the Court of Appeal is reversed and the matter is remanded to the Court of Appeal for further proceedings consistent with this opinion.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and, Moreno, J., concurred.