Filed 7/17/15  Phelps v. Bacon CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANET DENISE PHELPS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>KENNETH BACON, et al.,<br><br>        Defendants and Respondents. | A139771<br><br>(Solano County<br>Super. Ct. No. FCS041131) |

Plaintiff Janet Denise Phelps in propria persona appeals from the order granting the anti-SLAPP motion of defendants David Timko, Linda LaSorsa, and the law firm of Timko & LaSorsa (collectively and severally T&L), Kenneth Bacon, and the law firm of Lewis & Bacon (collectively and severally L&B) to strike her complaint.[1]  The court correctly found that Phelps's causes of action arose from protected activity under the anti-SLAPP statute (Code Civ. Proc., § 425.16), and that she did not establish a probability of prevailing on her claims.  Accordingly, we affirm.

---

[1] Phelps filed a timely notice of appeal in the superior court on September 13, 2013, naming Kenneth Bacon as the sole respondent.  In addition to that notice of appeal, we have received notices of appeal naming each of the other defendants as respondents.  These notices of appeal are not stamped as having been filed in the superior court.  The superior court docket indicates that these notices of appeal were timely received on September 16, 2013, but were returned to Phelps because "the original notice of appeal that was filed on Friday 9/13/13 is sufficient enough to cover the order filed on 7/15/13."  Under these circumstances, we conclude that Phelps has timely appealed as to all of the defendants who made the anti-SLAPP motion.

1

BACKGROUND

This is the third of three related suits Phelps has filed.  In the first action (Phelps I), Phelps, represented by counsel, sued Harry Misthos over a real estate dispute.  Terminating sanctions were imposed on Phelps for failing to respond to discovery.  The trial court rejected Phelps's claim that discovery defaults were excused by her ill health, finding " 'this claim is not adequately established by her medical evidence, and is also belied by the multiple motions and other documents she has filed after the court's issuance of the order compelling responses.' "  Division One of this Appellate District affirmed the trial court's decision on the point, holding that the court "acted well within its discretion in rejecting Phelps' medical excuses. . . . [I]t is indeed astounding that Phelps could devote energy to motion practice, and attend case events including the mediation one day before the hearing on Misthos's initial motion to compel, yet, at the same time, could not muster any energy over the course of two years, despite a court order, to answer two sets of discovery." (*Phelps v. Misthos* (Nov. 29, 2012, A129963) [nonpub. opn.], p. 8.)

In Phelps II, Phelps in pro per sued T&L, the opposing attorneys in Phelps I representing Mithos.  Her complaint included causes of action for legal malpractice and breach of fiduciary duty based on an alleged attorney-client relationship between Phelps and T&L in the real estate transaction that spawned the Phelps I suit.  T&L was represented in Phelps II by L&B.  L&B demurred to the first amended complaint, which was set for a hearing on December 4, 2008.  Phelps filed no opposition to the demurrer.  Meanwhile, in Phelps I, T&L subpoenaed Phelps's medical records from her treating nurse practitioner, Virginia Savely.  The records were copied on November 20, 2008, without objection from Phelps.

That same day, Phelps sent the judge in Phelps II a copy of a letter from Savely stating that she had an appointment with Phelps on October 13 and determined that Phelps was too ill to attend a case management conference on October 14.  On November 24, Phelps requested an extension of time to respond to the demurrer due to illness.  On December 2, Phelps sent the judge in Phelps II another letter from Savely stating that

2

Phelps suffered from "several chronic, debilitating illnesses," with symptoms that "waxe[d] and wane[d]. . . . [¶] Recent exacerbation of her symptoms has made it nearly impossible for her to attend to most aspects of her life. Her general exhaustion and mental unclarity make it difficult for her think (*sic*) or communicate. [¶] Please consider a 60 day postponement of legal matters, so that Ms. Phelps may recuperate."

On December 3, L&B wrote a letter to the judge in Phelps II objecting to Phelps's request for additional time to oppose the demurrer. The letter stated that L&B first learned of Phelps's November 24 extension request the previous day. The letter informed the court that during the time Phelps was allegedly too ill to respond to the demurrer, she had filed pleadings and made court appearances in Phelps I. The letter also stated that the medical records subpoenaed in Phelps I showed her last visit to Savely's medical office was on October 13. L&B enclosed "chart notes regarding the October 13, 2008 visit," and stated that the notes showed Phelps "was 'getting better' at that time but was suffering from a case of the flu." The letter added: "As noted above, since that time she recovered from the flu sufficiently so that she was able to attend a settlement conference on October 20, 2008 and a court hearing on November 7, 2008" in Phelps I.

That same day, the judge issued a tentative ruling sustaining the demurrer without leave to amend. Phelps did not request a hearing, and the tentative ruling became final on December 4. On December 23, the court filed a judgment of dismissal.

Six months later, on June 30, 2009, Phelps moved to set aside the judgment. Phelps asserted amongst other things that her "request for a continuance due to her illness was not considered by the court. The Plaintiff believes that was, at least in part, because she was prejudiced by the improper ex parte communication with court (*sic*) by the defendants together with the unlawful dissemination of her private health records."

In support of her motion, Phelps filed a May 11, 2009 letter from a doctor in Savely's medical office stating that "Phelps has been under our care with monthly visits since October 2006. . . . She has been diagnosed with chronic neurologic Lyme disease, sequelae of exposure to toxic mold, and Morgellons disease, a rare skin condition. . . . [¶] Symptoms have included extreme fatigue, painful skin lesions, muscle and joint pain,

3

severe headaches, stiff neck, nausea, blurry vision, cognitive difficulties such as inability to understand, remember or process information, and depression and anxiety due to her condition. These symptoms have rendered her incapable of working or engaging in all but the most basic self-care activities since October of 2006."

Phelps moved for an order that the doctor's letter and her medical records previously submitted to the court be sealed. In this motion, Phelps wrote: "In violation of the Plaintiff's civil liberties, the defendants demonstrated outrageous conduct for two experienced attorneys, when they knowingly and willfully obtained the Plaintiff's entire medical file from her health providers by the unlawful use of a discovery subpoena; [¶] The defendants subsequently transmitted that entire medical record file of approximately 42 pages to their attorney of record, Mr. Kenneth Bacon. The defendants did not seek, nor were they granted, permission or authorization from the Plaintiff, to obtain and/or further disseminate her private medical file; [¶] The defendants' attorney of record, Mr. Kenneth Bacon, after receiving the file in its entirety, singled out those individual records that best supported his contention that the Plaintiff should not receive additional time to prepare an opposition to the demurrer."

T&L opposed the motion to set aside the judgment, but did "not specifically oppose Ms. Phelps's request that she be allowed to file her medical records in conjunction with the motions under seal." However, T&L argued that Phelps had "waived her right of privacy and/or the physician-patient privilege regarding her medical records by tendering her medical condition as an issue in this action. In this regard, Ms. Phelps specifically tendered her medical condition in issue when she filed her untimely request for an extension of time to respond to defendants' demurrer on November 24, 2008, and on December 2, 2008, when she submitted a letter from Nurse Practitioner Virginia Savely."

In her August 18, 2009 reply, Phelps acknowledged that she had "probably" waived her physician-client privilege by making her medical condition an issue. However, she asked the court to refer the attorneys in the case to the State Bar, and to "take the necessary steps to discipline the defendant's attorney by turning this matter over

4

to the district attorney for prosecution" for violation of the Confidentiality of Medical Information Act." (Civ. Code, § 56 et seq.)

The court denied the motion to set aside the judgment, and another motion to set aside the judgment Phelps filed in November 2009. In October 2010, she filed a notice of appeal from the judgment, and Division Two of this District dismissed the appeal as untimely. (*Phelps v. Timko, et al.* (Jan. 19, 2012, A129979) [nonpub. opn.])

Phelps in pro per filed this lawsuit against T&L and L&B (hereafter collectively and severally defendants) on June 11, 2012. The complaint alleges that defendants violated her right to privacy, the Confidentiality of Medical Information Act, and the Americans With Disabilities Act (42 U.S.C. § 12101 et seq.) when they used her medical records subpoenaed in Phelps I in defense of her case in Phelps II. The date of the violations is identified as December 3, 2008, the date of L&B's letter to the judge in Phelps II objecting to Phelps's request for an extension of time to oppose T&L's demurrer, which attached a copy of nurse Savely's notes of Phelps's October 13, 2008 appointment. Although the letter indicates that a copy was faxed to Phelps, the complaint alleges that, "[b]ecause of her disabilities," she did not become aware of defendants' allegedly wrongful conduct until June 9, 2009. The causes of action against L&B alleged that L&B had unlawfully obtained and published Phelps's medical records. The cause of action for unlawful publication alleged that the December 3 letter defamed Phelps because it included "false assumptions . . . demeaning her illness and trying to usurp her medical provider's orders."

The court granted defendants' anti-SLAPP motion, finding that they were "acting in furtherance of their right of petition and free speech" when they disclosed "subpoenaed medical information about [Phelps] . . . in defending the actions [she] previously filed." The court determined that Phelps failed to establish a probability of prevailing on the merits, noting that she submitted no evidence in opposition to the motion. The court agreed with defendants that the disclosures of Phelps's medical information were protected by the litigation privilege (Civ. Code, § 47, subd. (b)), and that her causes of action were barred by statutes of limitation.

5

DISCUSSION

Resolving an anti-SLAPP motion is "[a] two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Code Civ. Proc., § 425.16, subd. (b)(1).] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Rulings on these anti-SLAPP issues are subject to de novo appellate review. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.)

The trial court correctly concluded that the unlawful acts alleged here were taken in furtherance of defendants' right of petition. Such acts include "any written or oral statement or writing made in connection with an issue under consideration or review by . . . a judicial body." (Code Civ. Proc., § 425.16, subd. (e).) Thus, the December 3, 2008 letter to the court was protected activity, as were the acts of obtaining and reading Phelps's medical records taken in furtherance of that protected activity. Phelps's case is indistinguishable in this respect from *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 813, where a law firm was sued for "receiving and using confidential information to prepare for and prosecute litigation against plaintiffs. . . . Clearly those claims arise from protected activity within the meaning of the anti-SLAPP statute."

The court also correctly ruled that Phelps did not establish a probability of prevailing on the merits. Phelps has no viable claim for invasion of privacy because she put her medical condition at issue in Phelps II. (*Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 43–44.) She has no viable claim for violation of the Confidentiality of Medical Information Act because that law does not regulate disclosures by attorneys. (Civ. Code, §§ 56.10 [disclosures by health care providers and health care service plans

6

or contractors]; 56.102 [disclosures by pharmaceutical companies]; 56.106 [psychotherapists]; 56.20 [employers]; 56.26 [providers of administrative services to programs paying for health care]; 56.265 [insurance underwriters].)  Phelps cites no authority suggesting that defendants can be held liable under the Americans With Disabilities Act for contesting her request for additional time to oppose the demurrer in Phelps II.  Phelps's defamation claim is time barred by the one-year statute of limitations set forth in Code of Civil Procedure section 340, subdivision (c).  (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246.)  Her complaint alleges that she discovered defendants' wrongdoing on June 9, 2009.  The complaint was filed more than one year later, on June 11, 2012.

DISPOSITION

The order granting the anti-SLAPP motion is affirmed.

                               _____

                               Siggins, J.

We concur:


_____

McGuiness, P. J.


_____

Jenkins, J.

*Phelps v. Bacon*, A139771